David Brafman
Mark D. Passler (*pro hac vice* to be filed)
AKERMAN LLP
777 South Flagler Drive
Suite 1100, West Tower
West Palm Beach, FL 33401
Tel. (561) 653-5000
Fax (561) 659-6313
Email: david.brafman@akerman.com
Email: mark.passler@akerman.com

-and-

Ira S. Sacks
AKERMAN LLP
666 Fifth Avenue, 20th Floor
New York, NY 10103
Tel. (212) 880-3800
Fax (212) 880-8965
Email: ira.sacks@akerman.com

*Counsel for Plaintiff CafeX Communications, Inc.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CAFEX COMMUNICATIONS, INC.<br><br>                              Plaintiff,<br><br>     -against-<br><br>AMAZON WEB SERVICES, INC.,<br><br>                              Defendant. | Case No.<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff CafeX Communications, Inc. ("CafeX" or "Plaintiff"), files this complaint against Defendant Amazon Web Services, Inc. ("AWS" or "Defendant") through its attorneys Akerman LLP and alleges on knowledge as to Plaintiff's own acts and otherwise on information and belief as follows:

## NATURE OF THE ACTION

1.      This is an action for trademark infringement, false designation of origin, unfair competition, and deceptive acts and practices in violation of the laws of the United States and the State of New York.  Plaintiff seeks a preliminary and permanent injunction and an award of profits, damages, and related relief.

## THE PARTIES

2.      Plaintiff CafeX is a Delaware corporation with its principal place of business at 521 Fifth Avenue, Suite 822, New York, NY 10175.

3.      Defendant AWS is a Delaware corporation with its principal place of business at 410 Terry Avenue North, Seattle, WA 98109.

## JURISDICTION AND VENUE

4.      Plaintiff's claims are predicated upon the Lanham Trademark Act of 1946, as amended, 15 U.S.C. § 1051, *et seq.*, and related claims under the statutory and common law of the State of New York.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).  This Court has supplemental jurisdiction over Plaintiff's state and common law claims pursuant to 28 U.S.C. § 1367(a).

5.      This Court has personal jurisdiction over Defendant because: (1) Defendant has committed, and continues to commit, acts of infringement in the Southern District of New York; and (2) Defendant has purposefully directed infringing conduct at Plaintiff in the State of New York, which caused and continues to cause Plaintiff harm in the State of New York.

6.      Venue is proper under 28 U.S.C. §§ 1391 and 1400 at least because Defendant has committed acts of infringement in this district and Defendant is subject to personal jurisdiction in this district.

**Plaintiff's CHIME™ Trademarks**

7. Plaintiff CafeX is a leader in the field of digital and online communication software and related services for businesses.

8. Among CafeX's products and services are products and services for businesses that enable groups of people in disparate locations to collaborate with each other in real time.

9. One year ago, in February 2016, CafeX announced a new video collaboration software product and service that it branded CHIME™.

10. CafeX's CHIME software allows employees and other business teams to communicate through video and voice conferencing, web chat, and document sharing. As CafeX explains in its marketing materials, CHIME software makes such collaboration simple. For example, joining a conference can be accomplished with a single click on your computer or phone. *See* https://www.cafex.com/products-chime.php ("Chime provides a simpler way for people to collaborate via web, voice and video conferencing. Join meetings securely with one click from any web browser.")

11. A month after its launch, CafeX promoted its CHIME software heavily at a trade conference called Enterprise Connect.

12. Enterprise Connect is the leading conference and exhibition for the business communications industry in North America. The conference features the latest communications and collaboration products, services, software and architecture for businesses. There are thousands of attendees, which include both vendors of communication products and services as well as corporate IT decision-makers.

13. At the 2016 Enterprise Connect, CafeX marketed the CHIME product and services not just at its booth, but throughout the trade show floor, including on a large video screen near the show floor entrance.

14. Each year, the organizers of the Enterprise Connect trade show award the exhibiting company with the most significant technological advancement within the enterprise communications and collaboration industry the Best of Enterprise Connect Award. The winner of the award is announced during an awards ceremony on the keynote stage at the trade show.

15. CafeX was publicly awarded the 2016 Best of Enterprise Connect Award for its CHIME communications solution, beating out much larger, household-name finalists that included Cisco, Vonage, and Sprint Business.

16. The success of CafeX's CHIME product and service has led to important partnerships with third-party companies.

17. CafeX has applied to register at the U.S. Patent and Trademark Office its marks CHIME™ and CAFEX CHIME™ as set forth below (collectively, the "CHIME Trademarks"):

| Mark | Int. Class | Goods or Services | Application no. |
| --- | --- | --- | --- |
| CHIME | 38 | Communication services, namely, transmission of voice, data, images, audio and video by means of wireless communication networks, and the Internet | 87/337,174 |
| CHIME | 42 | Providing temporary use of non-downloadable business communication software for electronically exchanging voice, data, video and graphics accessible via computer, computer browser applications, and mobile devices; Providing temporary use of non-downloadable business communication software for processing images, graphics, audio, video, and text; Providing temporary use of non-downloadable business communication software, namely, video and audio conferencing software; Software as a service (SAAS) in the nature of hosted cloud-based computer software applications and enterprise software applications for enabling exchange of voice, data, video and graphics accessible via computer, computer browser applications, and mobile devices | 87/337,193 |
| CHIME | 9 | Business communication software for electronically exchanging voice, data, video and | 87/337,261 |

{40841430;6}  4

| | | | |
|---|---|---|---|
| | | graphics accessible via computer, mobile, wireless, and telecommunication networks; business communication software for processing images, graphics, audio, video, and text; business communication software, namely, video and audio conferencing software | |
| CAFÉX CHIME | 38 | Communication services, namely, transmission of voice, data, images, audio and video by means of wireless communication networks, and the Internet | 87/336,805 |
| CAFÉX CHIME | 42 | Providing temporary use of non-downloadable business communication software for electronically exchanging voice, data, video and graphics accessible via computer, computer browser applications, and mobile devices; Providing temporary use of non-downloadable business communication software for processing images, graphics, audio, video, and text; Providing temporary use of non-downloadable business communication software, namely, video and audio conferencing software; Software as a service (SAAS) in the nature of hosted cloud-based computer software applications and enterprise software applications for enabling exchange of voice, data, video and graphics accessible via computer, computer browser applications, and mobile devices | 87/337,107 |
| CAFÉX CHIME | 9 | Business communication software for electronically exchanging voice, data, video and graphics accessible via computer, mobile, wireless, and telecommunication networks; business communication software for processing images, graphics, audio, video, and text; business communication software, namely, video and audio conferencing software | 86/964,190 |

18. U.S. Trademark Application Serial No. 86/964,190 for CAFEX CHIME has been published and formally allowed and is expected to issue shortly.

19. In addition, CafeX sometimes uses the following logo form of the CHIME trademark:

{40841430;6}                                    5



20.     As a result of Plaintiff CafeX's exclusive use and promotion of its products and services branded with the CHIME™ Trademarks, those marks have acquired significant value and recognition in the United States.

21.     The CHIME™ Trademarks are well-known to the consuming public and trade as identifying and distinguishing Plaintiff CafeX exclusively and uniquely as the source and origin of the high quality goods and services to which they are applied.

**Defendant's Illegal Conduct**

22.     Last week, on February 14, 2017, Defendant AWS announced a new communications and collaboration software service for businesses that competes directly with CafeX's CHIME product and service.

23.     AWS could have named its new product and service practically anything.  It chose, however, to blatantly infringe the CHIME Trademarks, marketing its product and service under the marks "CHIME" and "AMAZON CHIME" (the "Infringing Trademarks").

24.     AWS was aware of CafeX's CHIME product and service, as well as the CHIME Trademarks, before it launched its competing and infringing product and service.

25.     Not only is it essentially impossible for AWS to have been ignorant of CafeX's CHIME product and service before launching its competing product and service in light of industry acclaim received by CafeX for its CHIME product and service over the past year, but an AWS employee with the title Principal Product Manager visited CafeX's 2016 Enterprise Connect's booth where CafeX's CHIME product and service was being heavily promoted under the CHIME Trademarks.

26. AWS's marketing for its new product and service touts similar functionality for the same target customers as CafeX's CHIME product and service. *See* http://docs.aws.amazon.com/chime/latest/ug/what-is-chime.html ("Amazon Chime is a secure, real-time, unified communications service that transforms meetings by making them more efficient and easier to conduct."); https://chime.aws/ ("You can use Amazon Chime for online meetings, video conferencing, calls, chat, and to share content, both inside and outside your organization…. Meetings call you, and with a single tap or click, you can join or notify participants that you're running late…. You don't need to switch between applications to collaborate. Instantly go from a chat to a call, share your screen, and even invite more people, with a simple click or tap, all in the same application.")

27. Amazon also uses the following logo form of its Infringing Trademarks:



*See* https://chime.aws/.

28. The acts of Defendant in advertising, offering for sale, and selling in interstate commerce goods and services branded with the Infringing Trademarks are: (a) likely to cause confusion and mistake among the consuming public that such goods and services originate with Plaintiff, (b) likely to cause confusion and mistake among the consuming public that there is some affiliation, connection or association between Defendant and Plaintiff, and (c) likely to cause confusion and mistake among the consuming public that such goods and services are being offered to the consuming public with the sponsorship or approval of Plaintiff.

29. Not only is AWS's infringing CHIME product and service likely to cause confusion, but there have already been multiple instances of confusion since AWS's public launch of its product and service last week. As a result of AWS's infringement, CafeX has

received numerous communications from confused third parties, including queries regarding whether Amazon's product uses CafeX's CHIME technology and annoyed business partners confused into believing incorrectly that CafeX chose to partner with AWS rather than with them to market and sell CafeX's CHIME product and service.

30. AWS has signed up to be an exhibitor at the 2017 Enterprise Connect trade show where it is planning to promote its infringing CHIME product and service.

31. AWS's booth at the 2017 Enterprise Connect show is only two booths away from where CafeX's booth will be.

32. Thus, in a matter of weeks, at the industry's most significant trade show of the year, the same trade show where one year ago CafeX won Best of Enterprise Connect for its CHIME-branded technology and where thousands of potential customers and business partners will be in attendance, AWS will be promoting its competing and infringing CHIME-branded technology just 30 feet away from where CafeX will be promoting its CHIME-branded technology to the same potential customers and partners, causing great damage and irreparable harm to CafeX.

33. Furthermore, AWS is scheduled to give a keynote address at the 2017 Enterprise Connect show. AWS's address will be livestreamed over the internet, allowing anyone in the world to watch it live. AWS is expected to promote its infringing CHIME technology via its keynote address, providing it with massive marketing coverage under the Infringing Trademarks.

34. Defendant's willful infringement is likely to cause confusion and mistake among the consuming public as to the source, affiliation and/or sponsorship of Defendant's goods and services, and will improperly and unfairly provide Defendant with the benefit of the goodwill associated with the CafeX CHIME™ Trademarks.

35. In addition, AWS is a far larger and more renown company than CafeX. AWS reportedly had over $12 billion in sales and $3 billion in profit in 2016. If AWS is permitted to use the Infringing Trademarks at the upcoming Enterprise Connect trade show and otherwise continue to market its products and services under the Infringing Trademarks, AWS will be able to saturate the market, overwhelming CafeX and its CHIME Trademarks. As a result, the public will come to assume incorrectly that CafeX's CHIME-branded products and services are really AWS's, or that CafeX's CHIME-branded products and services are somehow connected to AWS. CafeX will thereby lose control over its goodwill and reputation, its identity, and the value of its CHIME Trademarks, to CafeX's great and irreparable harm.

**FIRST CLAIM FOR RELIEF**
**(FEDERAL FALSE DESIGNATION OF ORIGIN, FALSE ADVERTISING AND UNFAIR COMPETITION)**

36. Plaintiff adopts, repeats and realleges each and every allegation previously set forth in paragraphs 1-35 of this Complaint as if fully set forth in this paragraph.

37. Defendant's use and continued use of the Infringing Trademarks in providing and advertising in commerce substantially similar goods and services is an infringement of Plaintiff's exclusive rights and is likely to create confusion, or to cause mistake, or to deceive as to the origin, sponsorship or approval of Defendant's goods and services by Plaintiff in violation of 15 U.S.C. § 1125(a). Plaintiff has been damaged as a result, in an amount to be determined at trial.

38. Defendant's activities complained of herein are in bad faith, with the intent to trade upon the goodwill and reputation established by Plaintiff, to create confusion in the public mind, and to misappropriate Plaintiff's rights in said goodwill and reputation, all to the irreparable injury of Plaintiff, and has resulted in profits to Defendant.

39. Pursuant to § 35 of the Lanham Act (15 U.S.C. § 1117), Defendant's actions as set forth above permit recovery of Defendant's profits, damages, and costs by Plaintiff, including treble damages and Plaintiff's attorney's fees.

40. Defendant's activities complained of herein have caused and, unless restrained and enjoined, will continue to cause irreparable damage and injury to Plaintiff, for which Plaintiff has no adequate remedy at law.

## SECOND CLAIM FOR RELIEF
## (COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION)

41. Plaintiff adopts, repeats and realleges each and every allegation previously set forth in paragraphs 1-35 of this Complaint as if fully set forth in this paragraph.

42. The aforementioned acts of Defendant constitute trademark infringement and unfair competition in violation of the common law of the State of New York.

43. Such conduct on the part of Defendant has allowed Defendant to wrongfully profit and has injured Plaintiff in an amount to be determined at trial and has caused and threatens to cause irreparable injury to Plaintiff, for which Plaintiff has no adequate remedy at law.

## THIRD CLAIM FOR RELIEF
## (N.Y. GENERAL BUSINESS LAW § 349)

44. Plaintiff adopts, repeats and realleges each and every allegation previously set forth in paragraphs 1-35 of this Complaint as if fully set forth in this paragraph.

45. The aforementioned acts of Defendant constitute deceptive acts and practices and have caused and are expected to continue to cause consumer injury. These aforementioned acts of Defendant not only harm Plaintiff, but also harm the public interest, in violation of New York General Business Law § 349.

46. Such conduct on the part of Defendant has allowed Defendant to wrongfully profit and has injured Plaintiff in an amount to be determined at trial and has caused and threatens to cause irreparable injury to Plaintiff, for which Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court enter judgment against Defendant and in favor of Plaintiff as follows:

A. Finding that Defendant's activities complained of herein are unlawful under Federal and New York law;

B. Preliminarily and permanently enjoining and restraining Defendant, its respective subsidiaries, affiliates, divisions, officers, directors, principals, servants, employees, successors and assigns, and all those in active concert or participation with them, from:

(1) using, in any fashion, the Infringing Trademarks, the CHIME™ Trademarks, or any variations thereof or any trade name, trademark or service mark confusingly or deceptively similar to the CHIME™ Trademarks in connection with the promotion, advertising, solicitation, operation, conduct and expansion of Defendant's business;

(2) engaging in any other activity constituting unfair competition and unfair or deceptive acts or practices with Plaintiff, or constituting an infringement of the CHIME™ Trademarks, or of Plaintiff's rights in, or right to use or exploit such trademarks;

  (3)  making any statement or representation whatsoever, with respect to the infringing goods and services at issue, that falsely designates the origin of the services as those of Plaintiff, or that is false or misleading with respect to Plaintiff; and

  (4)  engaging in any other activity, including the effectuation of assignments or transfers of its interests in the Infringing Trademarks, or other infringements of the CHIME™ Trademarks, the formation of other corporations, partnerships, associations or other entities or the utilization of any other devices, for the purpose of circumventing, evading, avoiding or otherwise violating the prohibitions set forth in subsections B(1) through B(3) above.

C. Ordering Defendant, its respective subsidiaries, affiliates, divisions, officers, directors, principals, servants, employees, successors and assigns, and all those in active concert or participation with them to deliver to Plaintiff for destruction, all advertisements, brochures, promotional materials, signs, stationery, business cards, other written material or audiovisual items, clothing, personal accessories, or any other product or thing which depicts or otherwise discloses the Infringing Trademarks, or any name or mark confusingly similar thereto;

D. Ordering Defendant, its respective subsidiaries, affiliates, divisions, officers, directors, principals, servants, employees, successors and assigns, and all those in active concert or participation with them, to prepare and distribute corrective advertising;

E. Directing such other relief as the Court may deem appropriate to prevent the trade and public from deriving any erroneous impression that any goods and services at issue in this case that have been offered for sale, sold or otherwise circulated or promoted by Defendant are authorized by Plaintiff, or are related to or associated in any way with Plaintiff or its goods and services.

F. Requiring Defendant to account and pay to Plaintiff all profits realized by Defendant's wrongful acts and directing that such profits be enhanced because of, among other things, Defendant's willful actions.

G. Awarding Plaintiff damages for the injuries sustained by Plaintiff and directing that such damages be trebled because of, among other things, Defendant's willful actions.

H. Awarding Plaintiff its costs and reasonable attorneys' and investigatory fees, expenses, and costs, together with pre-judgment and post-judgment interest.

I. Directing that this Court retain jurisdiction of this action for the purpose of enabling Plaintiff to apply to the Court at any time for such further orders and interpretation or execution of any order entered in this action, for the modification of any such order, for the enforcement or compliance therewith and for the punishment of any violations thereof.

J. Awarding Plaintiff such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

    Plaintiff demands a jury trial.

Date:  February 22, 2017

Respectfully submitted,

By:   */s/David Brafman*
     David Brafman
Mark D. Passler (*pro hac vice* to be filed)
AKERMAN LLP
777 S. Flagler Drive
Suite 1100, West Tower
West Palm Beach, FL 33401
Tel: (561) 653-5000
Fax: (561) 659-6313
Email: david.brafman@akerman.com

Ira S. Sacks
AKERMAN LLP
666 Fifth Avenue, 20th Floor
New York, NY 10103
Tel. (212) 880-3800
Fax (212) 880-8965
Email: ira.sacks@akerman.com