David Brafman
Mark D. Passler (*pro hac vice* to be filed*)*
AKERMAN LLP
777 South Flagler Drive
Suite 1100, West Tower
West Palm Beach, FL 33401
Tel. (561) 653-5000
Fax (561) 659-6313
Email: david.brafman@akerman.com
Email: mark.passler@akerman.com

*Counsel for Plaintiff CafeX Communications, Inc.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CAFEX COMMUNICATIONS, INC. <br><br>                                  Plaintiff, <br><br>     -against- <br><br> AMAZON WEB SERVICES, INC., <br><br>                            Defendant. | Case No. 1:17-cv-01349 <br><br> **MEMORANDUM IN SUPPORT OF ORDER TO SHOW CAUSE FOR A PRELIMINARY INJUNCTION** |

{41017890;3}

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ................................................................................. 1

II.  STATEMENT OF FACTS .................................................................. 3

   A.   Plaintiff CaféX Launched Its CHIME Video Collaboration Product And
        Service A Year Ago To Great Industry Acclaim.................................. 3

   B.   CaféX's CHIME Trademarks ............................................................ 5

   C.   Two Weeks Ago, AWS – A Company With $12 Billion In Annual Sales –
        Launched A Competing Service For The Same Target Market Under The
        Same Trademark ............................................................................... 5

   D.   AWS's Infringement Is Already Causing Confusion ........................... 7

   E.   In One Month, At The Upcoming 2017 Enterprise Connect Trade Show,
        Defendant AWS Will Be Promoting Its CHIME-Branded Competing
        Service To The Thousands Of Attendees Only 30 Feet From CaféX's
        Booth.................................................................................................. 9

   F.   A Second-Quarter 2017 Launch By AWS's Partners Is Expected ....... 10

   G.   CaféX's Pre-Suit Attempt To Stop AWS's Infringement..................... 10

III. ARGUMENT ...................................................................................... 10

   A.   Legal Standards................................................................................ 10

   B.   There Is A Likelihood Of Success On the Merits Of CaféX's Claim For
        Infringement Of Its Federal Common Law Trademarks ..................... 11

        1.   Plaintiff Owns The Valid And Protectable CHIME Trademarks ........... 11

        2.   There Is A Likelihood Of Confusion Between Plaintiff's "CHIME"
             And AWS's Use Of "CHIME" On A Competing Service ...................... 13

             (a)   The CHIME Trademarks Are Strong............................................. 13

             (b)   The Trademarks Are Virtually Identical........................................ 14

             (c)   The Products and Services Are Identical ....................................... 15

             (d)   There Is No Gap To Bridge ......................................................... 16

             (e)   AWS Adopted The CHIME Trademark In Bad Faith ................. 16

             (f)   Confusion Already Exists ............................................................ 18

             (g)   The Inferior Or Similar Quality Of The Products Weighs In
                   Favor Of Finding Consumer Confusion ...................................... 19

             (h)   Purchasers of CaféX's Products Are Moderately
                   Sophisticated Business Professionals ........................................... 20

   C.   Injunctive Relief Is Necessary To Prevent Irreparable Harm.............. 21

     D.     The Balance Of Hardships Tips Decidedly In The CaféX's Favor ...................... 23

     E.     Public Interest Favors An Injunction .................................................. 24

     F.     There Is A Fair Ground For Litigation And The Balance Of Hardships Tips Decidedly In CaféX's Favor ........................................................ 24

IV.    CONCLUSION.......................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abercrombie & Fitch Co. v. Hunting World, Inc.,*
    537 F.2d 4 (2d Cir. 1976)............................................................12

*Charles of the Ritz Group Ltd. v. Quality King Distributors, Inc.,*
    832 F.2d 1317 (2d Cir. 1987)....................................................13

*Hormel Foods Corp. v. Jim Henson Prods., Inc.,*
    73 F.3d 497 (2d Cir. 1996)........................................................19

*Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger, U.S.A.,*
    80 F.3d 749 (2d Cir. 1996)........................................................17

*ITC Ltd. v. Punchgini, Inc.,*
    482 F.2d 135 (2d Cir. 2007)......................................................11

*James Burrough, Ltd. v. Ferrara,*
    165 N.Y.S.2d 825 (Sup. Ct. 1957)............................................20

*Lane Capital Mgmt. v. Lane Capital Mgmt.,*
    192 F.3d 337 (2nd Cir. 1999)..............................................12, 13

*Lane Capital Mgmt. v. Lane Capital Mgmt.,*
    15 F. Supp. 2d 389 (S.D.N.Y. 1998).......................................20

*Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co., Inc.,*
    799 F.2d 867 (2d Cir. 1986) .....................................................20

*Metro. Taxicab Bd. of Trade v. City of New York,*
    615 F.3d 152 (2d Cir. 2010) .....................................................10

*Mister Softee, Inc. v. Tsirkos,*
    No. 14-1975, 2014 WL 2535114 (S.D.N.Y 2014).................. 11, 22-23

*Mobil Oil Corp. v. Pegasus Petroleum Corp.,*
    818 F.2d 254 (2d Cir. 1987).................................................17, 19

*N. Am. Graphics, Inc. v. N. Am. Graphics of U.S., Inc.,*
    No. 97-3448, 1997 WL 316599 (S.D.N.Y. June 10, 1997) ...................16

*The Morningside Group Ltd. v. Morningside Capital Group, L.L.C.,*
    182 F.3d 133 (2d Cir. 1999)............................................14, 19, 20

*New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*,
    704 F. Supp. 2d 305 (S.D.N.Y. 2010)............................................................. 21-22

*Nikon Inc. v. Ikon Corp.*,
    987 F.2d 91 (2d Cir. 1993)..................................................................................15

*Paco Sport, Ltd. v Paco Rabanne Perfumes*,
    234 F.3d 1262 (2d Cir. 2000)..............................................................................16

*Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*,
    No. 99-10175, 2001 WL 170672 (S.D.N.Y. Feb. 21, 2001)....................................19

*Pfizer Inc. v. Sachs*,
    652 F. Supp. 2d 512 (S.D.N.Y. 2009)..................................................................18

*Pfizer, Inc. v. Y2K Shipping & Trading, Inc.*,
    No. 00-5304, 2004 WL 896952 (E.D.N.Y. Mar. 26, 2004).............................16, 18

*Polaroid Corp. v. Polaroid Elecs. Corp.*,
    287 F.2d 492 (2d Cir. 1961)..........................................................................11, 21

*ProFitness Phys. Therapy Cir. v. Pro-Fit Ortho. & Sports Phys. Therapy P.C.*,
    314 F.3d 62 (2d Cir. 2002)..................................................................................24

*Red Earth LLC v. United States*,
    657 F.3d 138 (2d Cir. 2011)................................................................................10

*Singas Famous Pizza Brands Corp. v. N.Y. Adver. LLC*,
    468 F. App'x 43 (2d Cir. 2012)...........................................................................10

*Star Indus. v. Bacardi & Co.*,
    412 F.3d 373 (2d Cir. 2005)................................................................................16

*Starbucks Corp. v. Wolfe's Borough Coffee*,
    588 F.3d 97 (2d Cir. 2009)..................................................................................11

*Tri-Star Pictures, Inc. v. Unger*,
    14 F. Supp. 2d 339 (S.D.N.Y. 1998)....................................................................16

*U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*,
    800 F. Supp. 2d 515 (S.D.N.Y. 2011) ........................................................ *passim*

*Virgin Enterprises Ltd. v. Nawab*,
    335 F.3d 141 (2d Cir. 2003)................................................................................13

*Vox Amplification Ltd. v. Meussdorffer*,
    No. 13-4922, 2014 WL 558866 (E.D.N.Y. 2014) .................................................23

## I.       INTRODUCTION

Plaintiff CaféX respectfully seeks urgent preliminary relief to prevent the irreparable harm that will result from allowing Defendant AWS to continue marketing its just-launched competing service under an essentially identical trademark, including at an important trade show that begins on March 27, 2017 and via an upcoming product launch by AWS's partners.

This is a textbook case of willful trademark infringement.

Last year, CaféX began offering a video conferencing and collaboration product and service for businesses under the trademark CHIME.   CaféX's CHIME technology allows business team members located in disparate locations to meet by video conference and share documents for discussion more simply and efficiently that was previously possible.   Indeed, CaféX's CHIME product and service immediately received industry recognition, winning the Best of Enterprise Connect Award at a significant trade show for the business communications industry held last March where CaféX had been promoting it.

At that 2016 Enterprise Connect trade show, among the visitors to CaféX's exhibitor booth covered in CHIME marketing material was an employee of Defendant AWS with the title Principal Product Manager.

With no prior warning, on February 14, 2017, Defendant AWS -- an Amazon.com subsidiary with $12 billion in annual revenues -- suddenly entered the video conferencing and collaboration space.   AWS's new video conferencing and collaboration service provides similar (though inferior) functionality as CaféX's CHIME service and is targeted at the same universe of business customers.   Although AWS could have named its service practically anything, AWS branded it AMAZON CHIME.

That AWS's AMAZON CHIME trademark includes the house brand AMAZON does nothing to prevent a likelihood of confusion.   It is common in the online industry for one

company to contract to provide the technology underlying another company's offering. Indeed, although AWS has only just begun to use the essentially same trademark for its directly competing service, it is already causing confusion, such as reflected in the following email CaféX received from a potential customer:

> Just read a news clipping about the launch Amazon Chime and glad that Chime deployment is growing fast!
>
> Thanks and Best Regards.
>
> M.Pandia ▇▇▇▇
> Director Technical
> **INTWEL TECHNOLOGIES LTD.,**
> Chennai, India

As described further below, CaféX has received numerous other communications since AWS's launch two weeks ago evidencing confusion in the industry and marketplace.

If AWS's marketing of its service under the mark AMAZON CHIME is not immediately enjoined, CaféX will suffer significant irreparable harm. Not only has confusion in the industry already begun, but the 2017 Enterprise Connect trade show starts on March 27, 2017. Both CaféX and AWS have exhibitor booths at the show, and unless enjoined, AWS will undoubtedly be promoting its competing service under its infringing trademark at its booth, located approximately 30 feet away from CaféX's booth.

Furthermore, AWS has indicated that its AMAZON CHIME service is about to be offered by its business partners Vonage and Level 3 to their many customers, providing AWS with even broader distribution of its service under the infringing mark.

If AWS is allowed to continue using the AMAZON CHIME mark, not only will AWS unfairly benefit from the goodwill CaféX has developed over the past year (*i.e.*, forward confusion), but AWS's size and huge customer base will allow it easily to out-market CaféX. Without a preliminary injunction, AWS will overtake CaféX's headstart and saturate the market

with its own advertising.  Potential customers will likely soon believe that CaféX's product and service is associated with Amazon's (*i.e.*, reverse confusion).  Both forward and reverse confusion will prevent CaféX from being able to control the reputation and goodwill associated with CaféX and its CHIME mark.  All this irreparable harm will be avoided by requiring AWS to stop the AMAZON CHIME mark now.

## II.    STATEMENT OF FACTS

### A.    Plaintiff CaféX Launched Its CHIME Video Collaboration Product And Service A Year Ago To Great Industry Acclaim

Plaintiff CaféX Communications is a small, young company that sells products and services enabling other businesses to communicate and collaborate more effectively, efficiently, and simply.  *See* Solito Decl. ¶ 2.[1]

One year ago, in February 2016, CaféX announced a new video collaboration software product and service that it branded CHIME:



> Collaboration just got easier

Chime provides a simpler way for people to collaborate via web, voice and video conferencing. Join meetings securely with one click from any web browser. Avoid all the usual hurdles, like downloading plugins, switching browsers or entering passcodes.

---

[1] "Solito Decl." refers to the Declaration of Dan Solito In Support Of CafeX's Order to Show Cause. "Ex. _" refers to the exhibits to the Solito Decl. "Brafman Decl." refers to the Declaration of David Brafman In Support Of Order To Show Cause For a Preliminary Injunction.

*See* Exs. A, B.   CaféX's CHIME software allows employees and other business teams to interact remotely through video and voice conference, web chat, and document sharing.  Solito Decl. ¶ 4. Moreover, as CaféX promotes in its marketing materials, its CHIME product and service makes such collaboration simple, such as by allowing you to join a video conference with a single click on your computer or phone.  *See id.*

A month after the initial launch, CaféX heavily promoted its CHIME product and service at a trade show called Enterprise Connect.  Enterprise Connect is a leading conference and exhibition for the business communications industry.  Exhibitors at the conference include vendors such as Microsoft, AT&T, Cisco, Comcast Business, Vonage Business, and CaféX who promote their latest communications and collaboration solutions for businesses.  There are thousands of attendees (in excess of 6,000), including corporate IT purchasers for businesses of all sizes as well as industry analysts and news reporters.  *See* Solito Dec. ¶¶ 6-9.

Not only did CaféX feature its CHIME product and service at its exhibitor booth, but it also promoted it around the trade show floor, including around and on a large video monitor near the floor's entrance (*see* Solito Decl. ¶ 10):

 

Each year at the Enterprise Connect trade show, the exhibiting company with the most significant technological advancement within the enterprise communications and collaboration industry is awarded the Best of Enterprise Connect Award.   The winner of the award is announced in an awards ceremony that takes place on the keynote stage at the show.  ***CaféX was publicly awarded the 2016 Best of Enterprise Connect Award for its CHIME communications solution***, beating out well-known finalists including Cisco, Vonage, and Sprint Business.  *See* Solito Decl. ¶¶ 11-13.

### B.      CaféX's CHIME Trademarks

Since announcing its CHIME product and service a year ago, CaféX has been marketing them under the marks CHIME and CAFÉX CHIME, as well as the logo   in several colors (collectively, the "CHIME Trademarks").  Solito Decl. ¶ 14.  CaféX began selling the CHIME product and service under those marks in approximately June 2016, and has been selling them continuously since then.  *See* Solito Decl. ¶ 15.

As a direct result of CaféX promoting and offering its industry-acclaimed product and service under the CHIME Trademarks in commerce over the past year, the industry and consuming public have come to associate the CHIME Trademarks with CaféX and its high-quality product and service.  *See* Exs. G-J, L-M.

### C.      Two Weeks Ago, AWS – A Company With $12 Billion In Annual Sales – Launched A Competing Service For The Same Target Market Under The Same Trademark

Defendant Amazon Web Services ("AWS") is a subsidiary of Amazon.com, Inc., that offers a variety of online-based services for businesses.  Solito Decl. ¶ 17, Exs. C, D.  AWS is a much larger company than CaféX, having $12 ***billion*** in annual sales (hundreds of times more revenues than CaféX) and more than $3 ***billion*** in profits in 2017.  Solito Decl. ¶ 20, Exs. C, D. AWS reports having over a ***million*** active customers, including Netflix, Kellogg's, Expedia,

Suncorp Bank, Siemens, Adobe, Comcast, Conde Nast, Unilever, GE, Brooks Brothers, Bristol-Myers Squibb, Spotify, Nasdaq, Bayer, Under Armour, and the American Heart Association, as well as small and medium-sized companies and government agencies.  *See* Exs. C-D.

Until two weeks ago, CaféX and AWS were not competitors.  Solito Decl. ¶ 22. However, that changed drastically on February 14, 2017, when Defendant AWS announced a new communications and collaboration software service for businesses that competes directly with CaféX's CHIME product and service.  Solito Decl. ¶ 23.  Astonishingly, AWS has named its competing service AMAZON CHIME (the "Infringing Trademark").  *See* Ex. E (https://chime.aws); Ex. Q (press release).

What makes AWS marketing its new video collaboration service under the virtually identical mark used by CaféX even harder to comprehend is that AWS has been aware of CaféX's CHIME product and service and the CHIME Trademarks for a year.  Solito Decl. ¶¶ 26-29.  Not only is it essentially impossible for AWS to have been ignorant of CaféX's CHIME product and service before launching is directly competitive service in light of the acclaim that CaféX has received for its CHIME technology, but an AWS employee named Pasquale DeMaio with the title Principal Product Manager visited CaféX's 2016 Enterprise Connect's booth 11 months ago, on March 26, 2016, where CaféX's CHIME product and service were being heavily promoted under the CHIME Trademarks.  Solito Decl. ¶¶ 26-28.  Not only was Mr. DeMaio's attendee badge scanned in at CaféX's booth, but he even exchanged a follow-up email with CaféX shortly after the show.  *See* Solito Decl. ¶¶ 28-29, Ex. R.

AWS's marketing of its CHIME video conferencing and collaboration service in competition with CaféX's for the same target business customers is made worse by AWS touting similar functionality such as "single tap or click":

## Why Amazon Chime

Make your online meetings effortless with Amazon Chime. Meetings start on time, and they're easy to join. Meetings call you, and with a single tap or click, you can join or notify participants that you're running late. A visual roster shows who is in the

…

Use one application to conduct online meetings, video conferencing, chat, screen sharing, and file sharing, both inside and outside your organization. You don't need to switch between applications to collaborate. Instantly go from a chat to a call, share

*See* Ex. E (https://chime.aws.com); Ex. F  (http://docs.aws.amazon.com/chime/latest/ug/what-is-chime.html).

**D.     AWS's Infringement Is Already Causing Confusion**

Despite starting only days ago, AWS's use of AMAZON CHIME for its competing service is already causing confusion among prospective customers, business partners, and industry analysts as to whether AWS's service uses CaféX's technology.   For example, on February 16, the Chief Technology Officer at another company in the communications technology industry sent CaféX an email asking, "Are Amazon using your tech or just stealing your name for similar tech?" (Ex. G):

From: Martin ▇▇▇ <▇▇▇@connectmanaged.com>
Date: 16 February 2017 at 10:20
Subject: Are Amazon using your tech?
To: Gethin Liddell <gliddell@cafex.com>

Hi Gethin,

Are Amazon using your tech or just stealing your name for similar tech?

http://searchunifiedcommunications.techtarget.com/news/450413080/AWS-launches-Amazon-Chime-challenges-Cisco-WebEx-Microsoft-Skype

Kind Regards,

Martin ▇▇▇
Chief Technology Officer

As another example, one of CaféX's prospective customers, the Technical Director at Intwel Technologies, sent CaféX an email congratulating CaféX on the Amazon Chime launch, incorrectly believing that Amazon's service was a deployment of CaféX's product. *See* Ex. H.

Similarly, upon learning of AWS's CHIME-branded service, an industry analyst asked CaféX (Ex. I):

> Any connection between CaféX Chime and Amazon's?
>
> http://www.nojitter.com/post/240172382/aws-moves-up-the-stack-to-ucaas
>
> **Sheila McGee-Smith**
> President & Principal Analyst
> McGee-Smith Analytics, L.L.C.

Likewise:

- A potential customer who had previously downloaded marketing material from CaféX about its Chime technology sent an email to a CaféX salesperson that contained a link to information about AWS's new service and asked, "Is this your Chime product"?

- A senior director at Polycom, Inc., contacted a CaféX sales director asking if the Amazon Chime service was the same as CaféX's.

- A product manager at Cisco sent an email to CaféX containing links to articles about Amazon Chime and asked, "Is this CaféX Chime?"

- A vice president and service director at Nemertes Research named Irwin Lazar emailed CaféX's vice president of marketing, asking, "I saw this mornings announcement of Amazon launching a conferencing service called Chime and was wondering if CaféX is the back end for this."

- A sales engineer at PinDrop, a CaféX business partner, asked CaféX if the Amazon Chime service used CaféX's CHIME technology or if CaféX had been purchased by Amazon.

*See* Solito Decl. ¶¶ 37-41, Exs. J, L-M.

Thus, AWS's infringement has already begun confusing the marketplace regarding whether CaféX is associated with AWS's new service.

**E.     In One Month, At The Upcoming 2017 Enterprise Connect Trade Show, Defendant AWS Will Be Promoting Its CHIME-Branded Competing Service To The Thousands Of Attendees Only 30 Feet From CaféX's Booth**

The 2017 Enterprise Connect trade show begins on March 27, 2017.  Solito Decl. ¶ 42. CaféX has purchased an exhibitor booth at which it will be promoting its products.  Solito Decl. ¶ 43.  AWS also has an exhibitor booth at the same show, and as shown on the following excerpt from the trade show floor plan, it will be located only two booths away from CaféX's booth:



*See* Ex. N.  Thus, in a few weeks, at the same trade show where one year ago CaféX won Best of Enterprise Connect for its CHIME-branded technology and where swarms of potential customers and business partners will be in attendance, AWS will undoubtedly be promoting its competing and infringing CHIME-branded technology approximately 30 feet away from where CaféX will be promoting its CHIME-branded technology to the same potential customers and partners. Solito Decl. ¶ 46.

Furthermore, AWS is scheduled to give a keynote address at the 2017 Enterprise Connect show.  The keynote addresses are made available over the internet following the show, allowing anyone in the world to view them post-conference.  Promotion of AWS's CHIME service via its

keynote address will provide AWS even more massive marketing coverage for its infringing trademark.  Solito Decl. ¶¶ 47-48.

### F.   A Second-Quarter 2017 Launch By AWS's Partners Is Expected

According to AWS's marketing materials, its infringing service will be made available through AWS's partners, Level 3 and Vonage, to all of their respective customers.  This launch is scheduled to take place shortly, in the second quarter of 2017.  Solito Decl. ¶ 49, Ex. Q.

### G.   CaféX's Pre-Suit Attempt To Stop AWS's Infringement

Two days after AWS announced its CHIME-branded service, CaféX sent AWS a letter asking AWS to cease using its just-launched Infringing Mark and rename its competitive service to something not confusingly similar to CaféX's CHIME mark.  *See* Ex. O.  CaféX further asked AWS to confirm that it would proceed accordingly by February 21.  *Id.*  Although in-house counsel at Amazon responded on February 16 that they would get back to CaféX, no further communications in response to the letter have been received.  Brafman Decl. ¶¶ 5-6.

## III.   ARGUMENT

### A.   Legal Standards

A court determining whether to grant a preliminary injunction must consider three factors: "(1) irreparable harm absent injunctive relief; (2) either a likelihood of success on the merits, or a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in the plaintiff's favor; and (3) that the public's interest weighs in favor of granting an injunction." *Red Earth LLC v. United States,* 657 F.3d 138, 143 (2d Cir. 2011) (quoting *Metro. Taxicab Bd. of Trade v. City of New York,* 615 F.3d 152, 156 (2d Cir. 2010)); *see also Singas Famous Pizza Brands Corp. v. N.Y. Adver. LLC,* 468 F. App'x 43, 43 (2d Cir. 2012).

To prevail on its federal trademark infringement claim, CaféX must show (1) it owns protectable rights in the asserted trademarks, and (2) a likelihood of confusion as to the source, sponsorship, or affiliation of the infringing product. *See Mister Softee, Inc. v. Tsirkos,* No. 14-1975, 2014 WL 2535114, at *5 (S.D.N.Y 2014) (internal citation omitted).  In turn, likelihood of confusion is determined by reference to the eight-factor balancing test announced in *Polaroid Corp. v. Polaroid Elecs. Corp.*, 287 F.2d 492 (2d Cir. 1961).  "The eight factors are: (1) strength of the trademark; (2) similarity of the marks; (3) proximity of the products and their competitiveness with one another; (4) evidence that the senior user may 'bridge the gap' by developing a product for sale in the market of the alleged infringer's product; (5) evidence of actual consumer confusion; (6) evidence that the imitative mark was adopted in bad faith; (7) respective quality of the products; and (8) sophistication of consumers in the relevant market." *Starbucks Corp. v. Wolfe's Borough Coffee,* 588 F.3d 97, 115 (2d Cir. 2009).  The application of the *Polaroid* test is "not mechanical, but rather, focuses on the ultimate question of whether, looking at the products in their totality, consumers are likely to be confused." *Id.*

As explained below, there is no question that Plaintiff owns the valid and protectable CHIME Trademarks, that there is a likelihood of confusion from Defendant's use of AMAZON CHIME, and that CaféX will be irreparable harmed without a preliminary injunction.

**B.**      **There Is A Likelihood Of Success On the Merits Of CaféX's Claim For Infringement Of Its Federal Common Law Trademarks**

**1.**      **Plaintiff Owns The Valid And Protectable CHIME Trademarks**

CaféX is the owner of all rights in the CHIME Trademarks in connection with online communication and collaboration products and services – the same services in connection with which AWS has begun using its Infringing Trademarks.

Federal common law trademark rights are obtained through adoption and continuous use of a trademark. *ITC Ltd. v. Punchgini, Inc.,* 482 F.2d 135 (2d Cir. 2007) ("so long as a person is the first to use a particular mark to identify his goods or services in a given market, and so long as that owner continues to make use of the mark, he is 'entitled to prevent others from using the mark to describe their own goods' in that market"). CaféX announced and began promoting its CHIME-branded product and service under the CHIME Trademarks in February 2016, and has been selling them under the CHIME Trademarks since approximately June 30, 2016. Solito Decl. ¶ 15.

Trademarks are analyzed on a spectrum of distinctiveness; they are either generic, descriptive, suggestive, arbitrary or fanciful. *See Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4, 9 (2d Cir. 1976). Generic words are ineligible for trademark protection. Descriptive trademarks, such as SHAKE 'N BAKE for a coating for chicken, are protectable only if they have become associated by the public with a single source for the relevant goods or services – that is, they have acquired "secondary meaning." Stronger still are suggestive marks, which require some imagination or thought in invoking the characteristics or qualities of the goods or services, and then arbitrary (APPLE for computers) and fanciful (XEROX, KODAK) marks. Suggestive, fanciful, and arbitrary marks are all "inherently distinctive", "automatically" protectable even without acquiring secondary meaning. *See Lane Capital Mgmt. v. Lane Capital Mgmt.*, 192 F.3d 337, 344 (2nd Cir. 1999).

The CHIME Trademarks are either arbitrary or, at worst, suggestive. They are obviously not generic, and they do not describe CaféX's product and service. Instead, the CHIME Trademarks are either arbitrary in connection with video conferencing and collaboration, or at worst, they require imagination and thought as to the nature of CaféX's CHIME-branded product

and service.  Thus, the CHIME Trademarks are inherently distinctive and do not require proof of secondary meaning to be valid trademarks.  *Lane Capital Mgmt.*, 192 F.3d at 344.

> ## 2. There Is A Likelihood Of Confusion Between Plaintiff's "CHIME" And AWS's use of "CHIME" on Identical Products and Services

> ### (a) The CHIME Trademarks Are Strong

Trademark strength is assessed in two ways:  the inherent distinctiveness of the mark, which is its legal strength, and the acquired distinctiveness and awareness in the marketplace, which is commercial strength.  *Virgin Enterprises Ltd. v. Nawab*, 335 F.3d 141, 147-49 (2d Cir. 2003).  By both of these measures, CaféX's CHIME Trademarks are strong.

As explained above, the CHIME Trademarks are arbitrary, or, at worst, suggestive.  They are therefore strong trademarks.

In addition, the CHIME marks have commercial strength.  First, CaféX has spent hundreds of thousands of dollars on promoting, marketing, and advertising its CHIME product and service.  Solito Decl. ¶ 16; *see Victorinox AG v. B & F System, Inc.*, 114 F. Supp. 3d 132 (S.D.N.Y. 2015) (advertising expenditures is a factor relevant to finding acquired distinctiveness of a mark).  Second, last year, CaféX received industry recognition when it was publicly awarded the 2016 Best of Enterprise Connect Award for its CHIME communications solution. Solito Decl. ¶ 13*; see Charles of the Ritz Group Ltd. v. Quality King Distributors, Inc.*, 832 F.2d 1317, 1321 (2d Cir. 1987) (the commercial success of a product reinforces the strength of the mark).  Third, the fact that CaféX has received numerous unsolicited communications since AWS's launch of AMAZON CHIME service two weeks ago asking about a connection between CaféX and AWS's service (*see* Exs. G-J, L-M) evidences that the CHIME Trademarks have indeed become associated with CaféX.

The inherent distinctiveness and commercial strength of the CHIME-branded product and service demonstrates that the CHIME Trademarks are entitled to a broad scope of protection in connection with video conferencing and collaboration products and services.  Thus, this factor favors CaféX.

**(b)**      **The Trademarks Are Virtually Identical**

AWS's infringing mark AMAZON CHIME is essentially identical to CaféX's CHIME Trademarks.

Assessing the similarity of the marks is based on the analysis of the similarity in appearance, sound, and meaning, *see U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515, 528 (S.D.N.Y. 2011), with a focus on "the general impression created by the marks, taking into account all factors that potential purchasers will likely perceive and remember."  *The Morningside Group Ltd. v. Morningside Capital Group, L.L.C.*, 182 F.3d 133, 140 (2d Cir. 1999) (internal citations omitted).  Here, there is little difference in the general impression made on potential purchasers between AWS's AMAZON CHIME trademark and CaféX's CHIME trademark.  The dominant part of AWS's mark is identical to CaféX's mark: CHIME.  The word AMAZON is merely a house brand that is already strongly associated with the Amazon.com website.  Thus, CHIME is the portion of AWS's mark that will stick out as denoting AWS's new service.

Moreover, there is a further reason why the inclusion of house marks such as AMAZON or CAFÉX will not dispel the likelihood of confusion that will result from the identical use of the word CHIME in the trademarks.  It is common in the online technology industry for one party to supply the underlying technology to another party.  Solito Decl. ¶ 53. By combining the words AMAZON and CHIME, all AWS has done is make it sound like it is using CaféX's technology "under the hood."  Indeed, this is borne out by the inquiries that have CaféX has already received

about the connection between AMAZON CHIME and CaféX.  *See* Exs. G-J, L-M; *see also A.T. Cross Co. v. Jonathan Bradley Pens, Inc.*, 470 F.2d 689, 692 (2d Cir.1972) (the addition of a house mark or trade name may aggravate the likelihood of confusion if "a purchaser could well think [one party] had licensed [the other] as a second user") (citing Menendez v. Holt, 128 U.S. 514, 521, 9 S.Ct. 143, 32 L.Ed. 526 (1888)); *Juicy ZCouture, Inc. v. L'Oreal USA, Inc.*, No. 04-7203, 2006 WL 1012939, at *21 (S.D.N.Y. 2006) (same).  Confusion as to affiliation is equally actionable under the Lanham Act as confusion as to source.

Furthermore, both parties also use logo versions of their marks.  AWS's logo is remarkably similar to CaféX's:



CaféX:                                                                AWS:





Considering the overall commercial impression on a consumer, including the common dominant use of the word CHIME in a large and clean font, the significantly smaller-sized house mark, the circular graphic design, and the overall look, the marks are virtually identical in their commercial impressions.  Even the aqua color scheme used by AWS's infringing logo is almost identical to one of the colors used by CaféX for its logo.

Thus, this factor strongly favors Plaintiff.

### (c)    The Products and Services Are Identical

 "The proximity inquiry asks to whether and to what extent the two products compete with each other."  *U.S. Polo Ass'n,* 800 F. Supp. 2d at 530.  "If the products serve the same purposes, fall within the same class, or are used for similar purposes, the likelihood of confusion

is greater." *Nikon Inc. v. Ikon Corp.*, 987 F.2d 91, 95 (2d Cir. 1993).  To analyze this factor, "the court may consider whether the products differ in content, geographic distribution, market position, and audience appeal." *Paco Sport, Ltd. v Paco Rabanne Perfumes,* 234 F.3d 1262 (2d Cir. 2000).

Here, there is no question about the proximity of the parties' services.  Both are using it on the identical service in direct competition with each other:  video conferencing and collaboration for businesses.  AWS's marketing for its CHIME service even touts similar functionality as CaféX's CHIME product and service, such as "single click" simplicity, via common marketing channels.  *See* Exs. E and F.  As such, this factor strongly favors Plaintiff.

### (d)    There Is No Gap To Bridge

"Bridging the gap" refers to whether the senior user is likely to develop a product for sale in the alleged infringer's market.  There is no gap to bridge here.  AWS is selling the identical service already being provided by CaféX.  *See Star Indus. v. Bacardi & Co.*, 412 F.3d 373, 387 (2d Cir. 2005) (when the parties' products "are already in competitive proximity, there is really no gap to bridge"); *N. Am. Graphics, Inc. v. N. Am. Graphics of U.S., Inc.,* No. 97-3448, 1997 WL 316599, at *5 (S.D.N.Y. June 10, 1997) ("where there is already an overlap in the market for the parties' products, as there is here, there is no gap to bridge, and the likelihood of confusion is increased") (internal citations omitted).  Thus, this factor also weighs in favor of CaféX.

### (e)    AWS Adopted The CHIME Trademark In Bad Faith

An analysis of bad faith focuses on "whether the defendant adopted the mark with the intention of capitalizing on plaintiff's reputation and goodwill, and any confusion between his and the senior user's product." *Pfizer, Inc. v. Y2K Shipping & Trading, Inc.,* No. 00-5304, 2004 WL 896952, at *5-6 (E.D.N.Y. Mar. 26, 2004).  Bad faith can be demonstrated by a showing of

actual or constructive knowledge of the prior user's mark. *See Tri-Star Pictures, Inc. v. Unger*, 14 F. Supp. 2d 339, 357 (S.D.N.Y. 1998) (citing *Mobil Oil Corp. v. Pegasus Petroleum Corp.,* 818 F.2d 254, 259 (2d Cir. 1987)). Bad faith can also be shown by the failure to change one's behavior after receiving a cease and desist letter or upon being sued. *See e.g., Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger*, U.S.A., 80 F.3d 749, 754 (2d Cir. 1996) (district court's failure, in analyzing bad faith evidence, to consider defendant's continued unlawful use of mark after plaintiff had filed trademark infringement suit constituted clear error).

AWS's bad faith is readily apparent. First, based upon the industry acclaim that CaféX received for its CHIME technology, CaféX's marketing of the brand, and information about the CHIME product and service readily available on the internet, it is essentially impossible that AWS could have been ignorant of it before launching a directly competing service.

Furthermore, on March 26, 2016, an AWS Principal Product Manager named Pasquale DeMaio had his attendee badge scanned at CaféX's 2016 Enterprise Connect's booth where CaféX's CHIME product and service was being heavily promoted under the CHIME Trademarks. AWS simply cannot claim ignorance of CaféX's prior use of the CHIME mark.

Despite knowing of CaféX's already-in-use CHIME Trademarks for an identical service, AWS chose to blatantly infringe, marketing its service under the AMAZON CHIME mark in what can only be an attempt to either capitalize on the goodwill CaféX has been generating for its CHIME-branded technology or else to attempt to run right over it, using its far larger customer base and marketing strength to dominate over CaféX's.

As soon as CaféX learned of AWS's infringement, it had its counsel send a cease and desist letter to AWS. Ex. O. AWS has not provided any substantive response to the letter. *See*

Brafman Decl. ¶¶ 4-6.   Instead, it continues to market and sell its competing service under its infringing mark.

Accordingly, this factor weighs in favor of CaféX.

### (f)   Confusion Already Exists

Actual confusion need not be shown to prevail on a trademark infringement claim under the Lanham Act for at least two reasons:   first, it is difficult to obtain evidence of actual confusion, and second, the Act only requires a ***likelihood*** of confusion.   *U.S. Polo Ass'n, Inc.*, 800 F. Supp. 2d at 531 (internal citations omitted); *Pfizer Inc. v. Sachs*, 652 F. Supp. 512, 523 (S.D.N.Y. 2009).

It is particularly difficult to locate evidence of actual confusion when, as here, the infringer has only just begun to infringe.   Nevertheless, CaféX has already received communications from prospective customers, industry analysts, and others in the industry asking whether AWS's service uses CaféX's CHIME technology, evidencing a likelihood of confusion as to source, sponsorship, or affiliation.   *See* Exs. G-J, L-M.

In addition, because "actual consumer confusion is not easily established through direct evidence or even through the use of consumer surveys or market research, the court may draw a 'powerful inference' of actual confusion" from the Defendants bad faith conduct.   *See*, *e.g*, *Pfizer, Inc. v. Y2K Shipping,* 2004 WL 896952, at *5-6.   Here, AWS launched its competing service under the AMAZON CHIME mark despite actual prior knowledge of CaféX's CHIME marks, and has not provided a substantive response to CaféX's cease and desist letter.   In light of this bad faith conduct, the Court can infer actual confusion, shifting the burden to AWS to demonstrate the absence of customer confusion.   *See id.*

As a result, this factor weighs in CaféX's favor.

> **(g)** **The Inferior Or Similar Quality Of The Products Weighs In Favor Of Finding Consumer Confusion**

The quality of a junior user's products can be relevant in two ways.  First, an inferior product may tarnish the senior user's reputation if consumers confuse the two.  *Morningside Group*, 182 F.3d at 142.  Second, products of equal quality may create confusion as to source because of the very similarity of quality.  *See Hormel Foods Corp. v. Jim Henson Prods., Inc.,* 73 F.3d 497, 505 (2d Cir. 1996)); *see also U.S. Polo Ass'n, Inc*., 800 F. Supp. 2d at 531.  Of course, "a senior user may sue to protect his reputation even where the infringer's goods are top quality."  *Mobil Oil Corp*., 818 F.2d at 259-60.

Here, CaféX has received industry recognition for its CHIME-branded technology -- the 2016 Best of Enterprise Connect Award.  Because it was just announced two weeks ago, the quality of AWS's new service is not well known, but at least one industry analysts has stated that "CaféX clearly has a better offering."  Solito Decl. ¶ 13, Ex. K.

As  noted above, even if AWS's infringing service were similar in quality to CaféX's, "courts in this Circuit have found that similarity in the quality of the products may create an even greater likelihood of confusion as to source inasmuch as consumers may expect products of similar quality to emanate from the same source." *U.S. Polo Ass'n, Inc*., 800 F. Supp. 2d at 537.

Moreover, since the gravamen of this factor is the senior trademark owner's ***loss of control*** over the quality of the goods and services that the public will incorrectly associate with it, Courts have weighed this factor in the senior user's favor ***regardless*** of the quality of the junior user's product.  Indeed, even where a determination of "inferior" versus "superior" quality cannot readily be made, a senior user "is entitled to have customers judge the quality of its product without being confused by" the junior user's product.  *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, Case No. 99-10175, 2001 WL 170672, at * 13 (S.D.N.Y. Feb. 21, 2001).

Accordingly, even without ascertaining the quality of the AWS's services, the mere fact that CaféX has no control over it results in legally cognizable harm. *James Burrough, Ltd. v. Ferrara*, 165 N.Y.S.2d 825, 826 (Sup. Ct. 1957) (A senior user "is not required to put its reputation in [a junior users] hands, no matter how capable those hands may be.")

Thus, this factor weighs in CaféX's favor.

### (h)   Purchasers of CaféX's Products Are Moderately Sophisticated Business Professionals

"Generally, the more sophisticated and careful the average consumer of a product is, the less likely that similarities in trademarks will result in confusion concerning the source or sponsorship of the product." *U.S. Polo Ass'n, Inc*., 800 F. Supp. 2d at 537. However, in some circumstances, Courts have found that the sophistication of consumers cannot dispel confusion and may instead *increase* the likelihood of confusion. *See e.g., Morningside Group Ltd.*, 182 F.3d at 142-43 ("It is clear in all events that when, as here, there is a high degree of similarity between the parties' services and marks, 'the sophistication of the buyers cannot be relied on to prevent confusion'"); *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co., Inc.,* 799 F.2d 867, 875 (2d Cir. 1986) ("we believe that it is a sophisticated jeans consumer who is most likely to assume that the presence of [defendant's] trademark stitching pattern on [defendant's] jeans indicates some sort of association between the two manufacturers"); *Lane Capital Mgmt. v. Lane Capital Mgmt.,* 15 F. Supp. 2d 389, 394 (S.D.N.Y. 1998) (where the products are identical and the marks are identical, the sophistication of buyers cannot be relied upon to prevent confusion).

Here, the parties' services are directed to moderately sophisticated business professionals and tout similar functionality. Particularly in light of it being common for technology companies to supply their technology to others, these business professionals' very sophistication will

increase the likelihood that they will be confused by AWS's use of CHIME to assume it signifies an association with CaféX.

Thus, this factor also weighs in CaféX's favor.

Because each of the *Polaroid* factors favors CaféX, CaféX has shown a likelihood of success on the merits of its federal Lanham Act claim.  For simplicity, CaféX does not address its remaining claims in this motion.

### C.      Injunctive Relief Is Necessary To Prevent Irreparable Harm

CaféX is in need of injunctive relief now to prevent irreparable harm.  As explained below, not only will AWS's general ongoing infringement cause CafeX to lose control the reputation of its CHIME brand, but AWS stands poised to flood the market with its own marketing under the infringing trademark at a trade show that begins on March 27, 2017, and with the announced upcoming launch of its service through large partner companies.

In a trademark case, irreparable harm exists "when the party seeking the injunction shows that it will lose control over the reputation of its trademark … because loss of control over one's reputation is neither 'calculable nor precisely compensable.'"  *New York City Triathlon, LLC v. NYC Triathlon Club, Inc.,* 704 F. Supp. 2d 305, 343 (S.D.N.Y. 2010) (internal citation omitted).  "Thus, it will often be the case that a party's demonstration of a likelihood of success on a trademark claim will show a threat of irreparable harm."  *Id.*  (internal citation omitted).

"'Because the losses of reputation and goodwill and resulting loss of customers are not precisely quantifiable, remedies at law [such as money damages] cannot adequately compensate [a trademark owner] for its injuries.'"  *Id.*

AWS's ordinary ongoing marketing and offering for sale its new service would be enough to make irreparable harm likely.  However, even more dire and imminent threats to CafeX loom large.  First, AWS is expected to heavily promote its AMAZON CHIME service at

the upcoming Enterprise Connect trade show that starts on March 27, 2017.  Second, AWS has announced that its well-known business partners Vonage, a leading provider of cloud communication services, and Level 3 Communications, a Fortune 500 company, are expected to start offering the AMAZON CHIME service to their customers "in the second quarter of 2017" – *i.e.*, any time after April 1, 2017.  Ex. Q.

Thus, in the absence of injunctive relief, CaféX faces the imminent prospect of substantial irreparable harm through diminished goodwill, loss of control over and damage to reputation, and loss of quality control, which harm will be irreparable.  *U.S. Polo Ass'n*, 800 F. Supp. 2d at 541 (absent an injunction, given the likelihood of confusion shown, "the reputation and goodwill cultivated by [plaintiff] would be out of its hands. The [defendant's] product may or may not be of high quality, sold with sufficient care to customer service, or convey the same branding image that has been highly cultivated by [plaintiff]."); *New York City Triathlon,* 704 F. Supp. 2d at 3 ("Plaintiff lost goodwill and the control of its reputation at the moment Defendant launched its infringing triathlon club name, and Plaintiff continues to face loss until Defendant's acts are enjoined.  No monetary sum can sufficiently remedy Plaintiff for this type of harm to its name and brand.")

In addition, because AWS is such a large company with such greater financial resources and such a large number of existing customers, if AWS is permitted to use its infringing mark AWS will be able to flood the market, overwhelming CaféX and its CHIME Trademarks. As a result, the public will come to assume incorrectly that CaféX's CHIME-branded products and services are really AWS's, or that CaféX's CHIME-branded products and services are somehow connected to AWS.  Such "reverse confusion" will result in even further loss of control by

CaféX over its goodwill and reputation, its identity, and the value of its CHIME Trademarks, to CaféX's great and irreparable harm.

The types of injuries detailed above have been found sufficient by Courts in this district to support grant of a preliminary injunction.  *See e.g., NYP Holdings,* 63 F. Supp. 3d at 341 ("irreparable injury is likely to occur in the absence of an injunction, with regard to both its trademark infringement claims and its ACPA claims"); *Mister Softee,* No. 14-1975, 2014 WL 2535114, at *10-11 ("Plaintiffs have made a clear showing that they will suffer irreparable harm in the form of consumer confusion, loss of goodwill, and potential damage to their reputation … Plaintiff's reputation will be irreparably injured as a result of Defendants continued use of confusing marks if the quality falls below Mister Softee standards… [and] if Defendant provides good service that is different from the standard Mister Softee service while selling confusingly similar marks, he will undermine the uniformity of products and services that is associated with the Mister Softee marks"); *Vox Amplification Ltd. v. Meussdorffer*, No. 13-4922, 2014 WL 558866, at *14-15 (E.D.N.Y. 2014) (finding likelihood of irreparable harm, stating that "if plaintiffs are allowed to continue using the trade dress and word mark associated with the defendants' [products], defendants will invariably suffer a loss of goodwill, erosion of its customer base and a loss of reputation").

### D.    The Balance Of Hardships Tips Decidedly In The CaféX's Favor

A preliminary injunction on AWS, a company with $12 billion in revenues and over a million pre-existing customers, limited only to the use of a newly launched brand for a single new service announced only two weeks ago would have negligible impact on AWS.  At the same time, that injunction will protect CaféX against the serious threat of irreparable harm.

Furthermore, while CaféX faces immediate and irreparable harm to its business interests, AWS is in no position to complain of any harm whatsoever.  AWS had knowledge of CaféX's

CHIME Trademarks and the services offered under them and should have considered the obvious consequences of its copying CaféX's CHIME trademark for use on a directly competing service.

Notably, CaféX does not seek an injunction preventing AWS from offering or even marketing its competing service. CaféX only seeks to prevent AWS from using its confusingly similar trademark when doing so. AWS will incur no genuine hardship to change the name of its service now, and whatever hardship there is, is of its own making – and a name change now will be far easier than in a year or more at the end of this case.

Accordingly, the equities and the balancing of conveniences favor CaféX.

### E.    Public Interest Favors An Injunction

Finally, the Court must ensure that the public interest would not be disserved by the issuance of a preliminary injunction. The Second Circuit has long held that there is a "strong interest in preventing confusion." *ProFitness Phys. Therapy Cir. v. Pro-Fit Ortho. & Sports Phys. Therapy P.C.*, 314 F.3d 62, 68 (2d Cir. 2002). CaféX has established that AWS's actions are likely to cause confusion. Therefore, the public interest favors the preliminary injunction.

### F.    There Is A Fair Ground For Litigation And The Balance Of Hardships Tips Decidedly In CaféX's Favor

Even if this Court does not find that CaféX is likely to succeed on the merits of its claims, for the same reasons that CaféX has articulated that it is likely to succeed, it has at the very least raised serious questions going to the merits of its claims and shown that the balance of hardships tips decidedly in its favor.

## IV.    CONCLUSION

Defendant AWS is unquestionably infringing upon CaféX's rights in the CHIME Trademarks. This matter is urgent because AWS is preparing to promote its newly-released

service under its infringing mark at a trade show beginning on March 27, 2017, and its partners are gearing up for a launch of the infringing service to their customers.  If AWS is not enjoined from offering the infringing products under the Infringing Trademark, AWS will inundate the market with promotion of its service, and CaféX's product and service will be forever buried under AWS's promotional avalanche.  For the foregoing reasons, Plaintiff CaféX respectfully requests that the Court immediately grant its motion for a preliminary injunction under Fed. R. Civ. P. 65(a) to prevent irreparable harm to CaféX and its CHIME Trademarks.

Dated:  New York, New York
        March 2, 2017

                              Respectfully submitted,

                              */s/ David Brafman*
                              David Brafman
                              Mark D. Passler (*pro hac vice* to be filed)
                              AKERMAN LLP
                              777 S. Flagler Drive
                              Suite 1100, West Tower
                              West Palm Beach, FL 33401
                              Tel: (561) 653-5000
                              Fax: (561) 659-6313
                              Email: david.brafman@akerman.com

                              Counsel for Plaintiff
                              *CaféX Communications, Inc.*