Justin A. Nelson (*pro hac vice*)
Chanler A. Langham (4355749)
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 653-7895
Facsimile: (713) 654-6666
Email: jnelson@susmangodfrey.com
Email: clangham@susmangodfrey.com

Drew D. Hansen (*pro hac vice*)
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, Washington 98101
Telephone: (206) 373-7384
Facsimile: (206) 516-3883
Email: dhansen@susmangodfrey.com

Lucas E. Issacharoff (5382494)
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (212) 729-2018
Facsimile: (212) 336-8340
Email: lissacharoff @susmangodfrey.com

*Counsel for Amazon Web Services, Inc.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CAFÉX COMMUNICATIONS, INC., | Case No. 1:17-cv-01349-VM |
| Plaintiff, | **DEFENDANT AMAZON WEB SERVICES, INC.'S RESPONSE TO PLAINTIFF'S ORDER TO SHOW CAUSE FOR A PRELIMINARY INJUNCTION** |
| v. | |
| AMAZON WEB SERVICES, INC., | |
| Defendant. | |

## **TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................1

II.     STATEMENT OF FACTS ........................................................................3

        A.      Biba and Amazon Chime ...............................................................3

        B.      CaféX and CaféX Chime ................................................................5

III.    LEGAL STANDARD ...............................................................................7

IV.     ARGUMENT ............................................................................................7

        A.      CaféX Cannot Demonstrate a Likelihood of Success on the Merits or a
                Serious Question Going to the Merits .............................................7

                1.      CaféX Has No Protectable Trademarks ..............................7

                        a.      CaféX Has Not Used Its "Café'X Chime" and
                                "Chime" Marks ........................................................7

                        b.      "Chime" Is Descriptive for the Business
                                Communication Services Café'X Claims to
                                Offer ..........................................................................10

                2.      CaféX Cannot Establish Likelihood of Confusion ...................12

                        a.      Strength of CaféX's Marks .............................................13

                        b.      Degree of Similarity Between "CaféX Chime"
                                and "Amazon Chime" ..................................................14

                                (1)     Prominent Use of CaféX and Amazon
                                        House Marks Distinguish the Marks....................14

                                (2)     The Marks as Actually Used by CaféX
                                        and Amazon Are Objectively Dissimilar...............15

                        c.      Proximity of Products .......................................................15

                        d.      Likelihood that CaféX Chime Will Bridge the
                                Gap ................................................................................17

                        e.      Actual Confusion ............................................................17

                                (1)     Survey Evidence Shows No Confusion .................17

                                (2)     Inquiries Do Not Show Confusion........................18

i

          f.      Good Faith ........................................................................20

          g.     Quality of CaféX's Product ...............................................21

          h.     Sophistication of Consumers .............................................21

    B.     CaféX Cannot Demonstrate a Risk of Irreparable Injury .....................................21

    C.     CaféX Cannot Demonstrate a Balance of Equities Tipping in Its Favor ...............23

    D.     The Public Interest Does Not Favor an Injunction .................................................25

V.    CONCLUSION ........................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*20th Century Wear, Inc. v. Sanmark-Stardust Inc.*,
   747 F.2d 81 (2d Cir. 1984)..........................................................................12

*A.T. Cross Co. v. Jonathan Bradley Pens, Inc.*,
   470 F.2d 689 (2d Cir. 1972)........................................................................15

*A.X.M.S. Corp. v. Friedman*,
   948 F. Supp. 2d 319 (S.D.N.Y. 2013).........................................................22

*Akiro LLC v. House of Cheatham, Inc.*,
   946 F. Supp. 2d 324 (S.D.N.Y. 2013).........................................................21

*Berkley Networks Corp. v. InMarket Media, LLC*,
   2014 WL 8332290 (S.D.N.Y. Dec. 30, 2014) .............................................24

*BigStar Entm't, Inc. v. Next Big Star, Inc.*,
   105 F. Supp. 2d 185 (S.D.N.Y. 2000).......................................12, 13, 22, 25

*Brennan's, Inc. v. Brennan's Rest., L.L.C.*,
   360 F.3d 125 (2d Cir. 2004)..........................................................................7

*Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*,
   973 F.2d 1033 (2d Cir. 1992).............................................................7, 11, 14

*Buti v. Perosa, S.R.L.*,
   139 F.3d 98 (2d Cir. 1998)............................................................................8

*Cadbury Beverages, Inc. v. Cott Corp.*,
   73 F.3d 474 (2d Cir. 1996)..........................................................................16

*Classic Liquor Importers, Ltd. v. Spirits Int'l B.V.*,
   201 F. Supp. 3d 428 (S.D.N.Y. 2016).........................................................21

*DownloadCard, Inc. v. Universal Music Grp., Inc.*,
   2002 WL 31662924 (S.D.N.Y. Nov. 26, 2002)...........................................24

*Edmiston v. Jordan*,
   1999 WL 1072492 (S.D.N.Y. Nov. 24, 1999).............................................19

*Estee Lauder, Inc. v. The Gap, Inc.*,
   108 F.3d 1503 (2d Cir. 1997).......................................................................13

*First Nat'l Bank of Omaha, Inc. v. Mastercard Int'l Inc.*,
   2004 WL 1575396 (S.D.N.Y. 2004).............................................................14

*Flushing Bank v. Green Dot Corp.*,
138 F. Supp. 3d 561 (S.D.N.Y. 2015) ...................................................... 12, 15

*Giggle, Inc. v. netFocal, Inc.*,
856 F. Supp. 2d 625 (S.D.N.Y. 2012) ..................................................... 13, 15

*Grand River Enter. Six Nations Ltd. v. Pryor*,
481 F.3d 60 (2d Cir. 2007) ......................................................................... 22

*Hutchinson v. Essence Commc'ns, Inc.*,
769 F. Supp. 541 (S.D.N.Y. 1991) ............................................................ 20

*In re United Pan-Eur. Commc'ns N.V.*,
2003 WL 221819 (S.D.N.Y. Jan. 30, 2003) ............................................... 22

*J.T. Colby & Co. v. Apple Inc.*,
2013 WL 1903883 (S.D.N.Y. May 8, 2013) ............................................... 14

*Jewish Sephardic Yellow Pages, Ltd. v. DAG Media, Inc.*,
478 F. Supp. 2d 340 (S.D.N.Y. 2007) ..................................................... 13, 19

*Joules Ltd. v. Macy's Merch. Grp., Inc.*,
2016 WL 4094913 (S.D.N.Y. Aug. 2, 2016) ............................................... 18

*Juicy Couture, Inc. v. L'Oreal USA, Inc.*,
2006 WL 1012939 (S.D.N.Y. Apr. 19, 2006) ............................................. 15

*Kurt S. Adler, Inc. v. World Bazaars, Inc.*,
897 F. Supp. 92 (S.D.N.Y. 1995) ............................................................... 21

*Lang v. Ret. Living Pub. Co.*,
949 F.2d 576 (2d Cir. 1991) ............................................................ 12, 13, 20

*Long Island-Airports Limousine Serv. Corp. v. N.Y. Airport Servs. Corp.*,
641 F. Supp. 1005 (E.D.N.Y. 1986) ........................................................... 24

*LVL XIII Brands, Inc. v. Louis Vuttion Malletier S.A.*,
2016 WL 4784004 (S.D.N.Y. Sept. 13, 2016) ............................................. 19

*M & G Elecs. Sales Corp. v. Sony Kabushiki Kaisha*,
250 F. Supp. 2d 91 (E.D.N.Y. 2003) .......................................................... 25

*Malaco Leaf, AB v. Promotion In Motion, Inc.*,
287 F. Supp. 2d 355 (S.D.N.Y. 2003) ........................................................ 21

*Mastrovincenzo v. City of New York*,
435 F.3d 78 (2d Cir. 2006) ........................................................................... 7

*Mazurek v. Armstrong*,
    520 U.S. 968 (1997)................................................................................... 6

*Mister Softee, Inc. v. Tsirkos*,
    2014 WL 2535114 (S.D.N.Y. June 5, 2014) .................................................. 23

*Mondo, Inc. v. Sirco Int'l Corp.*,
    1998 WL 849401 (S.D.N.Y. Dec. 7, 1998) ................................................... 15

*N.Y.C. Triathlon, LLC v. NYC Triathlon Club, Inc.*,
    704 F. Supp. 2d 305 (S.D.N.Y. 2010)......................................................... 23

*Nabisco, Inc. v. Warner-Lambert Co.*,
    220 F.3d 43 (2d Cir. 2000)......................................................................... 14

*New Look Party Ltd. v. Louise Paris Ltd.*,
    2012 WL 251976 (S.D.N.Y. Jan. 11, 2012) ................................................. 23

*Nextel Commc'ns, Inc. v. Motorola, Inc.*,
    2009 WL 1741923 (T.T.A.B. June 12, 2009) ................................................ 11

*Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*,
    269 F.3d 114 (2d Cir. 2001)................................................................. 14, 19

*NYP Holdings v. N.Y. Post Pub. Inc.*,
    63 F. Supp. 3d 328 (S.D.N.Y. 2014).......................................................... 23

*O'Keefe v. Ogilvy & Mather Worldwide, Inc.*,
    590 F. Supp. 2d 500 (S.D.N.Y. 2008)................................................... 14, 15

*Orb Factory, Ltd. v. Design Sci. Toys, Ltd.*,
    1999 WL 191527 (S.D.N.Y. Apr. 7, 1999).................................................. 17

*Pan Am. World Airways, Inc. v. Flight 001, Inc.*,
    2007 WL 2040588 (S.D.N.Y. July 13, 2007) .............................................. 25

*PaperCutter, Inc. v. Fay's Drug Co., Inc.*,
    900 F.2d 558 (2d Cir. 1990)................................................................. 10, 12

*Polaroid Corp. v. Polarad Elecs. Corp.*,
    287 F.2d 492 (2d Cir. 1961)....................................................................... 12

*Red Earth LLC v. United States*,
    657 F.3d 138 (2d Cir. 2011)......................................................................... 7

*Reese Pub. Co. v. Hampton Int'l Commc'ns, Inc.*,
    620 F.2d 7 (2d Cir. 1980)............................................................................ 7

*Silberstein v. Fox Entm't Grp., Inc.*,
    424 F. Supp. 2d 616 (S.D.N.Y. 2004) ........................................................................ 8

*Star Indus., Inc. v. Bacardi & Co.*,
    412 F.3d 373 (2d Cir. 2005) ........................................................................ 12, 17

*Streetwise Maps, Inc. v. VanDam, Inc.*,
    159 F.3d 739 (2d Cir. 1998) ........................................................................ 13

*Syntex Labs., Inc. v. Norwich Pharm. Co.*,
    437 F.2d 566 (2d Cir. 1971) ........................................................................ 9

*Tavern Corp. v. Dutch Kills Centraal*,
    2015 WL 5772158 (E.D.N.Y. Sept. 29, 2015) ........................................................ 25

*Tovey v. Nike, Inc.*,
    2014 WL 3510975 (N.D. Ohio July 10, 2014) ........................................................ 11

*U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*,
    800 F. Supp. 2d 515 (S.D.N.Y. 2011) ........................................................................ 23

*United Drug Co. v. Theodore Rectanus Co.*,
    248 U.S. 90 (1918) ........................................................................ 8

*Universal City Studios, Inc. v. Nintendo Co.*,
    746 F.2d 112 (2d Cir. 1984) ........................................................................ 19

*Vantone Grp. Liab. Co. v. Yangpu NGT Indus. Co.*,
    2015 WL 1055933 (S.D.N.Y. Mar. 11, 2015) ........................................................ 23

*Vitarroz Corp. v. Borden, Inc.*,
    644 F.2d 960 (2d Cir. 1981) ........................................................................ 16, 17

*Vox Amplification Ltd. v. Meussdorffer*,
    2014 WL 558866 (E.D.N.Y. 2014) ........................................................................ 23

*W. Pub. Co. v. Rose Art Indus., Inc.*,
    910 F.2d 57 (2d Cir. 1990) ........................................................................ 13

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ........................................................................ 7

*Wonder Labs, Inc. v. Procter & Gamble Co.*,
    728 F. Supp. 1058 (S.D.N.Y. 1990) ........................................................................ 21

*Wreal LLC v. Amazon.com, Inc.*,
    2015 WL 12550932 (S.D. Fla. Feb. 3, 2015) ........................................................ 14

**Statutes**

15 U.S.C. § 1127 ................................................................................................... 14

**Other Authorities**

2 McCarthy on Trademarks and Unfair Competition ................................................ 14, 20, 24, 25

Defendant Amazon Web Services, Inc. ("Amazon") hereby responds to Plaintiff CaféX Communications, Inc.'s ("CaféX") Order to Show Cause for a Preliminary Injunction.

## I.  INTRODUCTION

CaféX asks this Court to take the extraordinary step of stopping Amazon from using the commonly-used descriptor "Chime" as part of Amazon's independently-developed "Amazon Chime" product name. This immediate and sweeping relief would harm Amazon by requiring it to relaunch a major product at great cost. And it would effectively grant CaféX all the relief it seeks before it has turned over a page in discovery and before Amazon has even filed its answer.

Indeed, Amazon is likely to prevail on the merits. Just two days before CaféX filed its motion, the United States Patent and Trademark Office ("PTO") rejected CaféX's application for "CaféX Chime"—the only one of its purported marks that CaféX attempted to register before Amazon launched Amazon Chime—because CaféX failed to show use in commerce. CaféX now relies upon the same type of evidence that the PTO already rejected. And CaféX's problems do not end there: the term "Chime" is literally descriptive of CaféX's product; many "Chime"-related marks existed well before CaféX; and a survey has found 0% confusion. Moreover, while CaféX has not identified any concrete harm (or indeed any use of its product)—let alone harm that cannot be redressed later—Amazon will suffer severe and irreversible consequences if an injunction were to issue. Granting an injunction on these facts would be unprecedented.

CaféX's motion fails for four independent reasons. *First*, CaféX has no trademark entitled to protection. CaféX bears the burden of showing that it uses the marks in commerce. CaféX did not even apply to register "Chime" until after Amazon launched its product. And CaféX fails to show that its marks are used in commerce at all. CaféX presents no sales volumes, no profit margins, no evidence at all to indicate how, exactly, the asserted marks are used in commerce or

how consumers can purchase CaféX's product. Its free trial product, meanwhile, became available only after CaféX filed this motion. CaféX has categorically balked at discovery, refusing to produce its most basic sales information.

And although CaféX trumpets that it applied to register the "CaféX Chime" mark before Amazon launched Amazon Chime, it fails to mention the outcome of that application. The PTO so far has <u>refused to grant</u> "CaféX Chime" trademark protection because CaféX did not demonstrate use in commerce. Instead, CaféX submitted what the PTO described as "mere advertising material"—the same type of advertising material CaféX relies on in its motion. *Compare* Issacharoff ("Iss.") Decl. Ex. B *with* Solito Decl. Ex. A, B, K, P. Yet CaféX did not tell the Court or Amazon that the PTO just rejected the exact evidence on which CaféX now relies.

*Second*, even assuming CaféX used the marks in commerce prior to Amazon Chime, the term "Chime" is descriptive. It is commonly used in the webconferencing industry to refer to a feature of the product—the familiar "chime" that signals entry or exit from a conference call or web conference. For years before CaféX even filed its applications, companies have used "Chime" in their branding because the word immediately describes part of the product—not just "Amazon Chime" and "CaféX Chime" but "LiveChime," "Jive Chime," "Chime Be Heard," "CHIMEROI," "ChimeCRM," "Chime, Chime:)," "Chime In," "Chime.In," and "Chime Software." Indeed, <u>Amazon owns</u> the last three of these marks. Iss. Decl. ¶ 22. In an attempt to enter this crowded field, CaféX's marketing director, Allan MacGowan, signed a declaration in support of CaféX's registration application stating that "CaféX Chime" would not "cause confusion" with this pre-existing menagerie of "Chime"-related marks. Iss. Decl. Ex. B. And thus, "Chime" standing alone is descriptive—which is precisely what a trademark examiner recently concluded for "Chime" for text messages. *See* Iss. Decl. Ex. A (requiring disclaiming

"Chime" as descriptive in application for "Jive Chime": "[T]he evidence clearly shows that 'chive'[sic] is a term in the trade describing the sound made when text messages are received.").

*Third*, CaféX cannot show likelihood of confusion. Survey evidence—which CaféX notably failed to provide—shows that consumers do not confuse Amazon Chime with CaféX's marks. In fact, a survey of individuals conducted by Dr. Stephen Nowlis, a professor at the Washington University in St. Louis, found that not a single respondent mentioned CaféX in relation to Amazon Chime. Moreover, the marks as actually used are unlikely to be confused. CaféX's marks always occur in a CaféX-branded environment, Amazon's in an Amazon-branded environment. Using the house marks "Amazon" and "CaféX" is enough to prevent confusion, as these marks dominate the descriptive term. And the inquiries that CaféX cites are exactly the type that the Second Circuit has held do <u>not</u> constitute evidence of confusion.

*Fourth*, CaféX shows no irreparable harm, and the balance of hardships is decidedly in Amazon's favor. CaféX asks the Court to force Amazon to take down and rebrand, at great cost, a product using the commonly-used term "Chime" where CaféX has not proven it used the marks in commerce and where a survey finds no confusion.

## II. <u>STATEMENT OF FACTS</u>

### A. <u>Biba and Amazon Chime</u>

In late 2015, Amazon acquired Biba Systems Inc., a company with a flagship product called Biba that later became Amazon Chime. The team brainstormed a number of possible names as they prepared to launch an improved version of Biba as an Amazon-branded product. As the team culled through potential names, one employee mentioned during a team discussion that his wife had suggested "Amazon Chime," and this name quickly became a team favorite. Tietema Decl. ¶ 6. CaféX's Chime product never came up during the naming process, and the branding

team had not even heard of CaféX Chime. Tietema Decl. ¶¶ 9–10.

Amazon conducted a trademark search as part of the naming process. Tietema Decl. ¶ 8. CaféX applied to register "CaféX Chime" on April 5, 2016—therefore that application was discoverable, among hundreds of others, in a trademark search run before Amazon Chime's launch. Iss. Decl. ¶ 4. However, "Chime" as a stand-alone purported trademark for CaféX's product could not have shown up as a registered trademark or application during the naming process, because CaféX had not even <u>applied</u> to register "Chime" standing alone until <u>after</u> Amazon launched "Amazon Chime." Iss. Decl. ¶¶ 5–6.

Amazon Chime is a videoconferencing and collaboration service. Where most other products "are only good at one thing (*e.g.*, voice calls, video conferencing, screen sharing, or instant messaging)," forcing the customer to "toggle between several different tools," Amazon Chime offers an all-in-one software solution. Iss. Decl. Ex. N. It "deliver[s] very high quality video, voice, chat, and screen sharing." *Id.* Its features include compatibility with users joining conference calls via telephone, allowing connections across multiple devices such as iPads, smart phones, and computers, and meetings that call the user when it is time to start. *Id.* Amazon Chime launched on February 14, 2017. After launch, no articles about Amazon Chime appear to have mentioned CaféX until its lawsuit. And even after this lawsuit, many analysts reviewing Amazon Chime have favorably compared it to similar video conferencing and collaboration products by Google, Microsoft, and Cisco without mentioning CaféX's product. Iss. Decl. ¶¶ 15–17. Amazon Chime is available for download at the Amazon Chime page in an Amazon-branded environment at Amazon Web Services ("AWS") (https://chime.aws/), as well as through the Android and iOS application stores under "Amazon Chime," and will shortly become available through two third party vendors under "Amazon Chime." Tietema Decl. ¶¶ 16–17.

4

Amazon will attend the Enterprise Connect trade show from March 27–30, 2017. Despite CaféX's unfounded speculation, Amazon's presence at the trade show and its keynote address will focus primarily on the launch of a new, as-yet-undisclosed product—not on Amazon Chime. Tietema Decl. ¶ 18. Amazon will have at least two booths at the Enterprise Connect trade show, and—again contrary to CaféX's unsupported speculation—Amazon Chime will be promoted not at a booth near the CaféX booth but at one far away from the CaféX booth. *Id.*

**B.**     **CaféX and CaféX Chime**

CaféX applied to register "CaféX Chime" on April 5, 2016, in an "intent to use" application, in which the applicant claims an intention to later use the mark in commerce in connection with particular goods or services. Iss. Decl. Ex. B. CaféX had to sign a declaration stating that CaféX Chime would not "cause confusion" with other marks. *Id.* On January 30, 2017, CaféX filed a statement of use, asserting first use in commerce on June 30, 2016—months after the March 2016 Enterprise Connect conference. *Id.* On February 28, 2017, however, the PTO issued a non-final office action refusing to register the "CaféX Chime" trademark, because CaféX had only submitted "mere advertising material" that did not show use in commerce. *Id.*

Despite CaféX's boast of its "heavily promoted" and "acclaim[ed]" product, Mot. 4, 6, CaféX's trademark application—and the preliminary injunction brief and supporting declaration in this case—is notably silent about anything related to the <u>actual use in commerce</u> of "CaféX Chime" or "Chime." It gives no sales volumes, no profit figures, no information at all about how and to what extent the marks are actually used in commerce. CaféX also refers to its Chime product under a variety of other names, including "Chime by CaféX." *See* Solito Decl. Ex. B. Moreover, CaféX Chime is but one of many products listed on CaféX's webpage, and it appears that CaféX intends to promote other products at the upcoming conference. Iss. Decl. Ex. BB.

5

Indeed, it appears that CaféX's Chime product is not available for sale <u>at all</u>. Neither CaféX's brief nor the supporting declaration detail any way that customers can actually purchase or use the CaféX Chime product, or that any purchase has occurred at all. Although one can read about CaféX Chime on the www.CafeX.com website—viewing just the type of marketing material that the PTO concluded was merely advertising—it appears impossible to purchase the product through that website. Another CaféX-branded site (with an orange, not blue, logo)—www.justchimein.com—appears to offer free trials under the name "Chime by CaféX." Iss. Decl. Ex. I. The justchimein.com trial literally "chimes" to welcome the user to the meeting—but the user is not presented with any options to purchase the product. Iss. Decl. Ex. H. Moreover, it appears that CaféX just started these free trials on justchimein.com <u>after</u> this litigation and <u>after</u> Amazon Chime was released. The site justchimein.com appears to have been launched on or about February 27, 2017, thirteen days <u>after</u> Amazon Chime launched. Iss. Decl. ¶ 10. And CafeX.com appears not to have linked to justchimein.com until some point after March 6, 2017. Iss. Decl. ¶ 11. Nowhere do CaféX's filings mention these highly relevant facts.

Likewise, although CaféX applied to register the "CaféX Chime" mark in April of 2016, it was not until February 15, 2017—<u>the day after Amazon Chime's launch</u>—that CaféX chose to hastily file five other trademark applications, including for the "Chime" mark invoked by CaféX in this motion. Iss. Decl. ¶ 5. Despite this flurry of applications, CaféX does not own a single registered trademark relating to "Chime"—not "CaféX Chime," not "Chime," not anything else. Nor has CaféX applied to register a logo or color scheme, and CaféX's complaint specifically does not allege any infringement beyond the simple word marks "CaféX Chime" and "Chime." Compl. ¶ 17. And every single use of these "CaféX Chime" and "Chime" word marks cited by CaféX occurs in a heavily-branded, visually-distinctive "CaféX" environment. *See* Solito Decl.

Ex. A (CaféX press release bearing CaféX logo), B (pages from CaféX website), P (photos of CaféX Chime advertising). The same is true of the specimens of use submitted by CaféX in its (thus far unsuccessful) applications to register its purported marks. Iss. Decl. Ex. D, E, F.

### III. LEGAL STANDARD

A preliminary injunction is an "extraordinary and drastic remedy, one that should not be granted unless the movant, <u>by a clear showing</u>, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (internal quotation marks omitted). The moving party must show "(1) irreparable harm absent injunctive relief; (2) either a likelihood of success on the merits, or a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in the plaintiff's favor; and (3) that the public's interest weighs in favor of granting an injunction." *Red Earth LLC v. United States*, 657 F.3d 138, 143 (2d Cir. 2011). Further, a "heightened 'substantial likelihood' standard" applies here" because "the requested injunction (1) would provide [CaféX] with 'all the relief that is sought' and (2) could not be undone by a judgment favorable to [Amazon] on the merits at trial." *Mastrovincenzo v. City of New York*, 435 F.3d 78, 90 (2d Cir. 2006).

### IV. ARGUMENT

#### A.   CaféX Cannot Demonstrate a Likelihood of Success on the Merits or a Serious Question Going to the Merits

A trademark plaintiff must show "first, that its mark merits protection, and second, that the defendant's use of a similar mark is likely to cause consumer confusion." *Brennan's, Inc. v. Brennan's Rest., L.L.C.*, 360 F.3d 125, 129 (2d Cir. 2004).

#### 1.   CaféX Has No Protectable Trademarks

As CaféX has no registered trademarks, it bears the burden of showing that its marks are valid. *Reese Pub. Co. v. Hampton Int'l Commc'ns, Inc.*, 620 F.2d 7, 11 (2d Cir. 1980). CaféX

cannot meet this burden: it has not shown that it has used its marks in commerce, and those marks are merely descriptive, with no showing of secondary meaning. *See Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 973 F.2d 1033, 1039 (2d Cir. 1992).

a)      <u>CaféX Has Not Used Its "CaféX Chime" and "Chime" Marks</u>

CaféX has failed to show that its marks are used in commerce. Trademark rights depend on actual use of the mark to identify the origin of goods or services, because "a mark is merely a symbol of existing good will." 2 McCarthy on Trademarks and Unfair Competition § 16:12 (4th ed.). In particular, mere "[s]election of a mark with only an intention to do business in the future does not establish 'trademark' use of that symbol sufficient for priority over another." *Id.* The Lanham Act requires "the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark." 15 U.S.C. § 1127. And cases are legion where courts rebuff attempts to "stake a claim" to a mark in advance of the mark actually being used to describe the goods in commerce. In *Buti v. Perosa, S.R.L.*, 139 F.3d 98, 103 (2d Cir. 1998), for example, the Second Circuit explained that "[m]ere advertisement of a product by use of a mark would not constitute common law trademark use [because] [t]rademark rights develop when goods bearing the mark are placed in the market and followed by continuous commercial utilization." *See also Silberstein v. Fox Entm't Grp., Inc.*, 424 F. Supp. 2d 616, 633 (S.D.N.Y. 2004) (rejecting purported trademark that had been promoted by "all-out advertising and marketing campaign" because campaign "was a mere advertisement for . . . a hypothetical commodity").

Here, CaféX has failed to show that it has placed <u>any</u> goods bearing its marks in the market, much less demonstrated that the marks have been subject to "continuous commercial utilization." Despite CaféX's heavy burden, CaféX's motion is devoid of evidence of even a single sale. Instead, CaféX simply makes the bald assertion that "CaféX began selling the CHIME product

and service under those marks in approximately June 2016, and has been selling them continuously ever since." Mot. 5. But CaféX's sole citation for this contention, the Solito declaration, simply asserts this fact without support. *See* Solito Decl. ¶ 15.

Indeed, Amazon has been unable to determine how exactly one can purchase a product named "CaféX Chime" or "Chime." As of March 6, it appeared impossible to access or download a "CaféX Chime" or "Chime" product on CaféX's website. Iss. Decl. ¶ 11. Even now, at most one can access a free trial version at justchimein.com which was put online two weeks <u>after</u> the launch of Amazon Chime—and only linked to from CafeX.com within the last week. Iss. Decl. ¶¶ 9–11. Yet it is Amazon that owns a registered trademark for the term "Chime In."

CaféX's failure to offer <u>any</u> evidence of commercial use means that CaféX has not met its burden—let alone its heightened burden here. The PTO agrees.[1] Just two days before CaféX filed its motion, the PTO refused to grant CaféX's application to register the "CaféX Chime" mark because CaféX had not shown that it used the mark in commerce: "Registration is refused because the specimen in International Class 9 is not acceptable as a display associated with downloadable software and appears to be <u>mere advertising material</u>; thus, the specimen fails to show the applied-for mark in use in commerce for each international class." Iss. Decl. Ex. B. (emphasis added) (citations omitted). The "mere advertising materials" deemed insufficient by the PTO are <u>exactly the same</u> advertising materials that CaféX has chosen to rely on in its motion. *Compare* Solito Declaration ¶ 5 & Ex. B *with* Iss. Decl. Ex. B, at 29–32. In other words, the PTO placed CaféX on notice two days before it filed this motion that the advertising material

---

[1] The Second Circuit has instructed that the refusal of the PTO to register a mark is "entitled to great weight," *Syntex Labs., Inc. v. Norwich Pharm. Co.*, 437 F.2d 566, 569 (2d Cir. 1971).

cited in its brief did not demonstrate commercial use.

This Court should reject any attempt by CaféX to cure its failure of proof by submitting new evidence of commercial use in its reply, which would be improper under this Court's Individual Rule of Practice II.D and would severely prejudice Amazon. CaféX has no valid reason for failing to submit commercial use evidence: any such evidence would have been available to CaféX when it filed its motion, and the PTO refusal to register two days before CaféX filed its motion put CaféX squarely on notice of this deficiency.

        b)    <u>"Chime" Is Descriptive for the Business Communication Services CaféX Claims To Offer</u>

Although CaféX claims that its marks are "either arbitrary or, at worst, suggestive," Mot. 12, CaféX's marks literally describe the business communications services CaféX claims it offers. The term describes "an immediate idea of some characteristic or attribute of the product," and "convey[s] the characteristics of the goods, services, or business, [by] indicating the purpose, functions, size, quantity, capacity, or merits of a product . . . ." *PaperCutter, Inc. v. Fay's Drug Co., Inc.*, 900 F.2d 558, 562–63 (2d Cir. 1990).

At the most basic level, "Chime" is descriptive here because it immediately conveys characteristics or attributes of the product. It refers to the literal chime that the CaféX product makes when a user joins a CaféX Chime meeting. Iss. Decl. Ex. H. CaféX also features the literal "chime" in its marketing materials. *Id.* Thus, it aligns with the American Heritage Dictionary definition of the word "chime": "to call, send, or welcome by chiming." Iss. Decl. Ex. R. It also refers to the ability of a user to join a meeting. *See id.* (also defining "chime" to mean "[t]o join in harmoniously"). In fact, the PTO recently ordered an applicant to disclaim "chime" for messaging and communication services precisely <u>because</u> "chime" is descriptive. Iss. Decl. ¶ 3. The examiner noted the dictionary definitions of "chime" as both the sound and "to call, send, or

welcome by chiming," and widespread third party industry use of "chime." The examiner concluded with regard to "Jive Chime": "Here, the evidence clearly shows that 'chive'[sic, 'chime'] is a term in the trade describing the sound made when text messages are received." *Id.*

So too here. The term "Chime" is widely used for exactly the type of web collaboration services CaféX claims it offers. Attached as Exhibit G to the Issacharoff Declaration is a timeline detailing the history of applications using the "Chime" name. This timeline shows that CaféX was a latecomer to the Chime name, and chose to enter a crowded field. The repeated use of Chime as a name for conferencing services makes sense: "Chime" is a widely-used descriptive term for the signal that accompanies a participant entering or exiting a webconference. For example: (1) <u>Citrix</u>'s GoToMeeting service describes in its user guide how to enable "Entry/Exit Chimes: When enabled, a chime will play each time a participant joins or leaves the session"; (2) <u>Zoom</u>'s help center explains how to "Enable/Disable enter/exit chime"; (3) <u>TurboBridge</u> offers a "Chime" setting to turn entry and exit chimes on and off; (4) <u>UberConference</u> offers "entry/exit chimes"; and (5) <u>ScreenLeap</u> allows users to set entry and exit chimes. Iss. Decl. ¶ 19.

This widespread use of "chime" in the video conferencing and collaboration services industry—and the frequent use of "Chime" itself as a product name—weighs strongly in favor of finding "chime" to be descriptive rather than suggestive. *See Nextel Commc'ns, Inc. v. Motorola, Inc.*, 2009 WL 1741923, at *7 (T.T.A.B. June 12, 2009) (mark for "chirp" sound was not inherently distinctive since it was ubiquitous in the telecommunications industry). As for "CaféX Chime," the presence of the highly distinct house names—CaféX and Amazon—does not render the mark any less descriptive or any more susceptible to consumer confusion. *See Bristol-Myers Squibb*, 973 F.2d at 1040. In other words, the house brand—not the attached descriptive term— creates the protectability and distinguishes the marks. *See also infra* at 14–15.

In *BigStar Entm't, Inc. v. Next Big Star, Inc.*, this Court found "BIGSTAR" descriptive in the entertainment industry and denied a preliminary injunction: "[I]t requires no burst of inspiration or imagination to compose a name using 'big star' or to strike upon some other close adaptation of the words." 105 F. Supp. 2d 185, 201 (S.D.N.Y. 2000) (Marrero, *J*.). "Plaintiff's 'BIGSTAR' marks, comprised of ordinary words and coexisting with extensive third party usage, cannot be said on this record to be associated by prospective purchasers with a particular source." *Id.* at 205. Similarly, "Chime" is an ordinary word describing a feature of videoconferencing.

As "Chime" is descriptive for video and web conferencing and online meeting services, CaféX must show secondary meaning—*i.e.*, that the relevant consumer base identifies "Chime" with CaféX—for it to merit trademark status. *See 20th Century Wear, Inc. v. Sanmark-Stardust Inc.*, 747 F.2d 81, 90 (2d Cir. 1984) (descriptive terms only protected if plaintiff meets "heavy burden" of showing secondary meaning, which "entails vigorous evidentiary requirements"). But CaféX does not even try. It offers no "survey evidence of a representative sample of customers," or "volume of sales" that would show "commercial success," *Papercutter*, 900 F.2d at 564, to show that the public has come to identify "Chime" with CaféX.

## 2.   CaféX Cannot Establish Likelihood of Confusion

Even assuming the marks are protectable, CaféX cannot meet its high burden to show likelihood of confusion—a standard which requires "not a mere possibility" of confusion but rather likely confusion "affecting numerous ordinary prudent purchasers." *Star Indus., Inc. v. Bacardi & Co.*, 412 F.3d 373, 383 (2d Cir. 2005) (emphasis added) (internal quotation marks omitted). Importantly, "[t]rademark infringement protects only against mistaken purchasing decisions and not against confusion generally." *Lang v. Ret. Living Pub. Co.*, 949 F.2d 576, 583 (2d Cir. 1991). Likelihood of confusion is measured with by the factors set forth in *Polaroid*

*Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492 (2d Cir. 1961). CaféX bears the burden to establish likelihood of confusion. *Flushing Bank v. Green Dot Corp.*, 138 F. Supp. 3d 561, 589 (S.D.N.Y. 2015). Here, the survey evidence showing no confusion, along with the weakness of CaféX's marks, the parties' use of house brands to differentiate the products, and the sophistication of the consumers, among other factors, demonstrates that no likelihood of confusion exists.

### a.   Strength of CaféX's Marks

The first *Polaroid* factor is strength of the plaintiff's mark, which includes both inherent distinctiveness (whether the mark is descriptive, suggestive, and so on) and acquired distinctiveness (whether the mark is associated with the user in the marketplace). *Giggle, Inc. v. netFocal, Inc.*, 856 F. Supp. 2d 625, 631 (S.D.N.Y. 2012). Here, CaféX's marks are weak for three reasons. *First,* as noted above, "Chime" for these services is not inherently distinctive because it is descriptive rather than suggestive or arbitrary. And CaféX has offered no evidence that Chime has acquired distinctiveness in the marketplace. *See id.* (explaining that "acquired distinctiveness depends on a mark's secondary meaning in the marketplace").

*Second*, courts have repeatedly held that extensive third party use of similar marks suggests that a mark is weak. *See, e.g.*, *Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 744 (2d Cir. 1998) (even "suggestive" STREETWISE was "not strong" given extensive third party use). The extensive use of "Chime" for video conferencing and collaboration services—Chime.in, Jive Chime, etc.—makes this case a textbook "[c]rowded trademark market." 2 McCarthy § 11:85. The widespread use of "Chime" makes CaféX's mark, in McCarthy's terms, "one of a crowd of similar marks," and "[i]n such a crowd, consumers are not likely to be confused between any two of the crowd." *Id*. And as this Court has held: "Extensive third party use of the term 'Big Star' as a mark, especially by businesses which may directly compete with plaintiff, weighs against a

13

finding that plaintiff's unregistered marks are strong." *BigStar*, 105 F. Supp. 2d at 204.

*Third*, CaféX claims to have used the Chime name for one year. Uses of such short duration make a mark relatively weak. *See Jewish Sephardic Yellow Pages, Ltd. v. DAG Media, Inc.*, 478 F. Supp. 2d 340, 346 (S.D.N.Y. 2007) (finding four years insufficient to confer protection).

### b.   Degree of Similarity Between "CaféX Chime" and "Amazon Chime"

The second *Polaroid* factor—degree of similarity—also weighs against likely confusion because "a court must analyze how the marks are viewed in the context of the marketplace." *O'Keefe v. Ogilvy & Mather Worldwide, Inc.*, 590 F. Supp. 2d 500, 521 (S.D.N.Y. 2008).

### (1)   Prominent Use of CaféX and Amazon House Marks Distinguish the Marks

An obvious and dispositive difference exists between "CaféX Chime" and "Amazon Chime"—the prominent use of the "CaféX" and "Amazon" house marks. Caféx's "Chime" also appears in a CaféX-branded environment. *Supra* at 7. Case after case has held that products' appearing with a house brand is sufficient to distinguish the marks. "[P]rominent use of [defendant's] well-known house brand . . . significantly reduces, if not altogether eliminates, the likelihood that consumers will be confused as to the source of the parties' products." *Nabisco, Inc. v. Warner-Lambert Co.*, 220 F.3d 43, 46 (2d Cir. 2000); *see also Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 269 F.3d 114, 123 (2d Cir. 2001) ("Based on the record before us, we find that the presence of the prominent and distinctive labels alone negates any possibility of a likelihood of confusion . . . ."). Consumers know "Amazon Chime" is from Amazon because Amazon is part of the name. Consumers know that CaféX Chime is from CaféX because CaféX is part of the name and "Chime" appears in a heavily CaféX-labeled setting.

In an attempt to sidestep the importance of the house marks, CaféX argues that it is common for one party to supply technology to another party in the technology industry. But this ignores

the requirement that house marks are analyzed as they are viewed in the marketplace. *O'Keefe*, 590 F. Supp. 2d at 521. Indeed, *Juicy Couture, Inc. v. L'Oreal USA, Inc.*, 2006 WL 1012939, at *21 (S.D.N.Y. Apr. 19, 2006), a case cited by CaféX, specifically found that there was no likelihood of confusion between senior JUICY for women's clothing and junior JUICY WEAR for cosmetics because accused mark appeared near or in conjunction with house mark. Likewise, courts in this district have specifically distinguished another case cited by CaféX, *A.T. Cross Co. v. Jonathan Bradley Pens, Inc.*, 470 F.2d 689 (2d Cir. 1972), where (as here) the house mark is just as prominent as the allegedly infringing word. *See Mondo, Inc. v. Sirco Int'l Corp.*, 1998 WL 849401, at *7 (S.D.N.Y. Dec. 7, 1998). And indeed consumers, when actually surveyed, did not exhibit confusion, refuting CaféX's speculation about hypothetical confusion about licensing.

### (2) The Marks as Actually Used by CaféX and Amazon Are Objectively Dissimilar.

While CaféX claims the logos are "remarkably similar," CaféX does not assert infringement of the "Chime" or "CaféX Chime" logos or the colors therein. Compl. ¶ 17. Indeed, CaféX has not even attempted to register the logo it highlights in its brief. In any event, CaféX features many different logos, using marks that are blue, yellow, orange, and red throughout its marketing. Iss. Decl. Ex. M. It prominently displays an <u>orange</u> logo on justchimein.com. Iss. Decl. Ex. I. This inconsistency makes it highly unlikely that consumers have associated the aqua color CaféX cherry-picked for its brief with CaféX's product. Amazon, by contrast, always uses blue. *See, e.g.*, *Flushing Bank*, 138 F. Supp. 3d at 588 (marks dissimilar because different emphasis and colors); *Giggle*, 856 F. Supp. 2d at 635 (marks dissimilar where colors differed).

### c. Proximity of Products

The "proximity of products" inquiry looks at whether and to what extent the products compete with one another. *See Cadbury Beverages, Inc. v. Cott Corp.*, 73 F.3d 474, 480 (2d Cir.

1996). The court considers "the nature of the products themselves and the structure of the relevant market," which takes into account the class of customers to whom products are sold, the manner in which the products are advertised, and the channels through which the goods are sold. *Id.* (quoting *Vitarroz Corp. v. Borden, Inc.*, 644 F.2d 960, 967 (2d Cir. 1981)).

To begin with, <u>no</u> overlap exists in purchasing channels: CaféX Chime is not available for purchase through Amazon's channels; and Amazon Chime is not sold in whatever as-yet-unidentified sales channels CaféX uses to sell CaféX Chime. It is unlikely that a consumer who must purchase the CaféX product through some website associated with CaféX will believe that the product is somehow affiliated with Amazon; by the same token, a consumer using "Amazon Chime" has no reason to believe that the Amazon Chime product has anything to do with CaféX.

Even at the product level, consumers would appreciate the obvious differences between Amazon and CaféX's offerings. Amazon Chime <u>lacks</u> the primary feature that CaféX claims is the principal advantage of its CaféX Chime product, namely, the ability to participate interactively without downloading a plugin. Tietema Decl. ¶¶ 14–15. Amazon Chime is a much broader communications solution than CaféX Chime, offering features that include enabling connectivity on multiple devices (including, *inter alia*, iPads, cell phones, and computers), incorporating users via telephone (users are not limited to participating only by videoconference), and meetings that call the user when it is time to start. Tietema Decl. ¶¶ 13–16. Finally, CaféX's claim that CaféX Chime is similar to Amazon Chime merely because both will be present at the Enterprise Connect conference is without merit. The Enterprise Connect conference will include a large variety of products that have little to do with one another, including sessions focusing on artificial intelligence, customer service, and the Internet of Things, among others. Iss. Decl. Ex. Z. Even now—after suit—CaféX discusses multiple

products aside from CaféX Chime that it intends to promote at the conference. Iss. Decl. Ex. BB.

### d.  Likelihood that CaféX Chime Will Bridge the Gap

The fourth factor is the likelihood that CaféX will enter Amazon's business, or the "average consumer's perception of the likelihood" that CaféX would enter Amazon's market segment. Here, Amazon Chime offers a distinct service based on a proprietary application. CaféX Chime, by contrast, trumpets as its key feature that it seamlessly integrates within existing web browsers, and is in fact apparently only accessible via a website. Solito Decl. Ex. A, B. CaféX has given no indication that it intends to expand into desktop applications or browser plugins—in fact, such a move would negate its primary selling point. Under such circumstances, a lack of intent to bridge the gap between products weigh in Amazon's favor. *See Vitarroz Corp.*, 644 F.2d at 969 (where seller of crackers had no intent to expand into chips, use of BRAVOS mark on chips did not infringe on BRAVO mark for crackers).

### e.  Actual Confusion

### (1)  Survey Evidence Shows No Confusion

Survey evidence of likelihood of confusion is one of the most important pieces of evidence in the likelihood of confusion analysis. A plaintiff's "failure to present its own consumer survey weighs against a finding of consumer confusion." *Star Indus., Inc.*, 412 F.3d at 388; *see also Orb Factory, Ltd. v. Design Sci. Toys, Ltd.*, 1999 WL 191527, at *12 (S.D.N.Y. Apr. 7, 1999) ("[A] plaintiff's failure to offer a survey showing the existence of confusion is evidence that the likelihood of confusion cannot be shown.") (collecting cases). Here, CaféX presents no survey. CaféX has known about Amazon's product since at least February 14, and yet still did not submit a survey showing confusion. And a party's failure of proof is not excused by the fact that the party chose to file a motion without taking time to gather evidence to support the motion.

17

By contrast, Amazon <u>has</u> presented a survey of individuals who either were or would be involved in selecting video/web conferencing and collaboration services, which shows that confusion is highly unlikely. The survey by Dr. Stephen Nowlis, professor of marketing at the Washington University in St. Louis business school, follows the well-known "Eveready" format—presenting a mark as seen in commerce and a control and asking a series of open-ended questions about source, sponsorship, and affiliation. *See Joules Ltd. v. Macy's Merch. Grp., Inc.*, 2016 WL 4094913, at *5, *10 (S.D.N.Y. Aug. 2, 2016). Dr. Nowlis surveyed a total of over 400 respondents—200 test and 202 control—who were involved in the acquisition of technology for their companies, and who either had recently or expected to soon assist in the acquisition of video/web conferencing and collaboration services, and found 0% confusion because no one presented with the Amazon Chime mark or a control associated it with CaféX. Nowlis Decl. ¶¶ 7–9, 15. Indeed, even under conservative assumptions looking beyond the name itself, Dr. Nowlis found at most only a 1% de minimis confusion level, which in his words is "statistically indistinguishable from zero." *Id.* According to a leading treatise, <u>no</u> reported case has found likely confusion with survey results below 8.5%. 2 McCarthy § 32:188. In fact, survey results of 10% are affirmative evidence that confusion is not likely. 2 McCarthy § 32:189.[6]

### (2)   Inquiries Do Not Show Confusion

---

[6] CaféX may respond by claiming that consumer awareness of their marks is not sufficiently high for consumers to identify CaféX in response to open-ended *Eveready* survey questions. But that argument not only contradicts CaféX's assertions about how their product is well-known, *see* Mot. 4–5, it refutes their entire confusion theory: consumers cannot think CaféX is responsible for Amazon's product if consumers do not associate the "Chime" with CaféX in the first place.

CaféX relies on a handful of email communications to attempt to suggest actual confusion. Of the six emails provided, at least five actually demonstrate that consumers are <u>not</u> confused about the difference between Amazon Chime and CaféX Chime, as they inquire whether Amazon Chime is affiliated with CaféX Chime. *See* Solito Decl. Ex. G, I, J, L, M. The Second Circuit has recognized that such inquiries are not probative of actual confusion. *See Nora Beverages*, 269 F.3d at 124 ("Inquiries about the relationship between an owner of a mark and an alleged infringer do not amount to actual confusion. Indeed, such inquiries are arguably premised upon a *lack* of confusion between the products such as to inspire the inquiry itself.").

The other email cited by CaféX, Solito Ex. P, is not even from a U.S. customer in the relevant market, but from a person in India. Tellingly, CaféX gives no details about the person, whether he is a United States customer, or whether he is affiliated with CaféX. Indeed, it redacts key portions of the email. Such limited anecdotal evidence is of little utility in assessing actual confusion. Further, all of the individuals emailing CaféX appeared to have a preexisting business relationship with CaféX and are therefore not reflective of the average consumer. *See, e.g.*, *Jewish Sephardic Yellow Pages*, 478 F. Supp. 2d at 370 ("[C]ourts have concluded that testimony from persons closely associated with the plaintiff does not adequately reflect the views of the buying public." (internal quotation marks omitted)).

Finally, any evidence of confusion must be more than *de minimis*. Once again, CaféX has failed to provide any context to determine whether its hearsay evidence—even if probative— rises above a minimal level. *See, e.g.*, *Universal City Studios, Inc. v. Nintendo Co.*, 746 F.2d 112, 118 n.8 (2d Cir. 1984) (the fact that there may be a few confused consumers does not create a sufficiently disputed issue of fact regarding the likelihood of confusion). This is especially true here because any evidence of confusion must be connected to a risk of actual mistaken

purchases, not mere inquiries. *See Lang*, 949 F.2d at 583.

**f.    Good Faith**

The sixth *Polaroid* factor focuses on "whether the defendant[s] adopted [their] mark with the intention of capitalizing on plaintiff's reputation and goodwill and any confusion between [defendants'] and the senior user's product." *Lang*, 949 F.2d at 583. Here, Amazon simply did not appropriate the Amazon Chime name from CaféX. Instead, the name was suggested by an employee's wife during the naming process. *Cf. Hutchinson v. Essence Commc'ns, Inc.*, 769 F. Supp. 541, 567 (S.D.N.Y. 1991) (finding that defendant's innocent explanation of her choice of infringing mark as her stage name demonstrated lack of bad faith). Contrary to CaféX's speculation, the Amazon employee who visited the CaféX booth at the Enterprise Connect trade show had nothing to do with naming Amazon Chime and had never worked on the Amazon Chime team. Tietema Decl. ¶ 11. Indeed, to the best of Amazon's knowledge, CaféX was never mentioned by anyone on the Amazon Chime product or branding team until the instigation of this litigation. Tietema Decl. ¶¶ 9–12; *see also supra* at 3 (discussing Amazon's good faith).

Moreover, Amazon conducted a trademark search here, Tietema Decl. ¶ 8, which is strong evidence of good faith under Second Circuit precedent. *See Lang*, 949 F.2d at 583 (listing "request for a trademark search" as distinct factor showing good faith). At the time the search was conducted, CaféX had only applied for the house mark "CaféX Chime"; CaféX had not yet applied to register for "Chime." Iss. Decl. ¶¶ 4–7; *see also supra* at 5–7. Regardless, any "prior knowledge of [CaféX's house-marked] trade name does not give rise to a necessary inference of bad faith, because adoption of a trademark with actual knowledge of another's prior registration of a very similar mark may be consistent with good faith," *Lang*, 949 F.2d at 583–84, a conclusion all the more true here where the mark at issue was not yet registered.

20

Finally, CaféX suggests bad faith based on Amazon's supposed failure to "substantively respond" to CaféX's cease and desist letter, which it sent less than a week before filing suit. Yet CaféX acknowledges that Amazon did respond to CaféX's letter, and offers no reason why Amazon would respond further after CaféX filed suit days later. And in any case, courts have held that receipt of a cease-and-desist letter does not establish bad faith. *Wonder Labs, Inc. v. Procter & Gamble Co.*, 728 F. Supp. 1058, 1064 (S.D.N.Y. 1990).

### g. Quality of CaféX's Product

The seventh factor is neutral, as CaféX has produced no meaningful evidence of the products' relative quality. *See Classic Liquor Importers, Ltd. v. Spirits Int'l B.V.*, 201 F. Supp. 3d 428, 449 (S.D.N.Y. 2016) ("Without the aid of consumer survey evidence or expert testimony, the Court is unable to draw any conclusions as to the respective quality of the products.").

### h. Sophistication of Consumers

The final *Polaroid* factor "recognizes that the likelihood of confusion between the products at issue depends in part on the sophistication of the relevant purchasers." *Kurt S. Adler, Inc. v. World Bazaars, Inc.*, 897 F. Supp. 92, 99 (S.D.N.Y. 1995). This factor cuts especially strongly in Amazon's favor. Even CaféX has to acknowledge in its motion that the consumers are "moderately sophisticated business professionals." Mot. 20. CaféX claims that the sophistication of the consumers will result in a greater likelihood of confusion. But that gets the law exactly backwards: "[A] finding that relevant buyers are sophisticated militates against a finding of likelihood of confusion." *BigStar*, 105 F. Supp. 2d at 214.

### B. CaféX Cannot Demonstrate a Risk of Irreparable Injury

"[T]he single most important prerequisite [for] issuance of preliminary injunctive relief" is that CaféX will suffer irreparable harm. *A.X.M.S. Corp. v. Friedman*, 948 F. Supp. 2d 319, 337

(S.D.N.Y. 2013). CaféX's harm must be "neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial." *Grand River Enter. Six Nations Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (internal quotation marks omitted). A court will not find irreparable harm based on a conclusory proffer unsupported by facts. *See In re United Pan-Eur. Commc'ns N.V.*, 2003 WL 221819, at *4 (S.D.N.Y. Jan. 30, 2003) (rejecting "irreparable harm" because there were no "specific allegations" as to what movant's reputation was at time and how it would be affected by non-movant's actions).

CaféX has failed to demonstrate that it will suffer irreparable harm. *First*, CaféX has shown no evidence of sales; thus, it has shown no likelihood of harm to future sales. *Second*, CaféX has failed to show that it has built up any goodwill or positive reputation. CaféX claims, without support, that it has built up goodwill in the past year. Mot. 2. But allegations of loss of goodwill without factual support are insufficient to meet CaféX's high burden on a preliminary injunction.

*Third*, CaféX claims that it will suffer irreparable harm if Amazon Chime is not enjoined before the Enterprise Connect conference. This conclusory allegation does not satisfy CaféX's burden. In *Vantone*, for example, where the plaintiff alleged that defendant's grand opening created a risk that "potential clients [would] associate or continue to associate [the defendant] and his business with the 'Vantone' name," the court rejected plaintiff's claim as conclusory, noting that plaintiff did "not elaborate on the nature of the anticipated harm," "explain how the anticipated harm is actual and imminent, rather than speculative," or "offer any argument as to why a monetary award would be insufficient to compensate them for any injury actually suffered." *Vantone Grp. Liab. Co. v. Yangpu NGT Indus. Co.*, 2015 WL 1055933, at *4 (S.D.N.Y. Mar. 11, 2015). Here, too, CaféX has failed to show how Amazon Chime's presence at Enterprise Connect would be harmful to CaféX Chime, nor has CaféX even attempted to show

how it could not be compensated with a monetary award if it suffered injury.

*Fourth*, despite CaféX's claim that Amazon Chime will "flood the market, overwhelming CaféX and its CHIME Trademarks," CaféX's conclusory allegations about the goodwill it has established in less than one year are insufficient. Moreover, CaféX's cases all involved plaintiffs who were able to show the potential harm of loss of substantial goodwill that had developed over long periods of time. *See, e.g.*, *N.Y.C. Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 343 (S.D.N.Y. 2010) (plaintiff amassed "substantial goodwill" over ten years); *U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515, 541 (S.D.N.Y. 2011) (noting that marks had been used for over thirty years).

Other courts in this district have acknowledged that allegations of establishing goodwill over a few years are insufficient, particularly where, as here, there is little evidence of brand loyalty or recognition within an industry crowded with "Chime" products. CaféX's only claim of industry acclaim is its "unveiling" at Enterprise Connect, but it has not established that it has even sold a single product. *See New Look Party Ltd. v. Louise Paris Ltd.*, 2012 WL 251976, at *10 (S.D.N.Y. Jan. 11, 2012) (denying injunction because "plaintiff has yet to accrue significant goodwill"). Accordingly, CaféX has failed to meet its burden of proving irreparable injury.

In contrast, and as discussed below, Amazon will suffer concrete and irreparable injury should this Court grant the injunction. At a minimum, Amazon would have to abandon its name at substantial cost based on nothing more than CaféX's sparse factual allegations and its refusal to engage in discovery in advance of the hearing. *See* Iss. Decl. Ex. CC, DD.

### C. CaféX Cannot Demonstrate a Balance of Equities Tipping in Its Favor

In assessing this factor, courts consider, *inter alia*, defendant's expenditures on its brand (and anticipated expenditures were it to be forced to rebrand). *See Berkley Networks Corp. v.*

*InMarket Media, LLC*, 2014 WL 8332290, at *4 (S.D.N.Y. Dec. 30, 2014) (holding that balance favored defendant where forcing it "to abandon [its] name before trial would result in significant expenses"). If Amazon had to abandon the Amazon Chime name now, the damage would be significant and concrete. Amazon would be forced to spend hundreds of thousands of dollars and months of time to rebrand its product, reprogram the application, rewrite websites, revise marketing materials and documentation, reshoot promotional videos, and create backwards compatibility with existing https://chime.aws URLs in order to avoid stranding the thousands of already-active users with meetings based upon the current name. Tietema Decl. ¶¶ 19–20.

All of this damage to Amazon—the cost and time of a forced re-branding and the consumer confusion that would inevitably result—would be practically impossible to reverse. *Cf. Long Island-Airports Limousine Serv. Corp. v. N.Y. Airport Servs. Corp.*, 641 F. Supp. 1005, 1012 (E.D.N.Y. 1986) ("If the final verdict favored [defendant] it would then have to repaint its fleet, restore its former name and reeducate the public."); *DownloadCard, Inc. v. Universal Music Grp., Inc.*, 2002 WL 31662924, at *5 (S.D.N.Y. Nov. 26, 2002) (denying preliminary injunction that "would cause significant expense, marketing disruption, and commercial embarrassment, in part impossible to quantify, to defendant"). In short, an injunction now would have the same effect as CaféX winning full victory after trial, despite the inadequate record proffered by CaféX.

This concrete and irreversible harm to Amazon far outweighs any speculative harm to CaféX from any remote and theoretical possibility of confusion, as CaféX has failed to demonstrate sales, reputation, or goodwill. *See supra* 8–10; *cf. Tavern Corp. v. Dutch Kills Centraal*, 2015 WL 5772158, at *21 (E.D.N.Y. Sept. 29, 2015) (denying motion where defendant would be forced to "chang[e] the signage and rebrand[] the business" while plaintiff "ha[d] not shown that its sales or reputation ha[d] suffered since [defendant] opened for business"). Given that Amazon

24

would face extreme hardship while CaféX has failed to show any real harm, the equities weigh in favor of Amazon. *See Pan Am. World Airways, Inc. v. Flight 001, Inc.*, 2007 WL 2040588, at *20 (S.D.N.Y. July 13, 2007) (denying motion because defendant would have to change its signage and website and would lose the goodwill it has developed in the mark).

### D.    The Public Interest Does Not Favor an Injunction

A strong public interest exists in keeping words in the public domain. As this Court has previously held in denying a preliminary injunction, "when the Court is called upon to make judgments that infringe upon what rightfully belongs to all, the bar should be set high, and the test should be made more exacting. Ambiguities or doubts in this regard should be resolved in favor of broader, rather than narrower, access to and circulation of words and terms in the public domain." *BigStar*, 105 F. Supp. 2d at 201–02. "The exclusive appropriation of plain speech for trade purposes hampers market entrance and restrains the equal access of a competitor to a shared idiom by which to brand a vying product in terms that describe its contents and qualities or advertise its merits." *Id.* Where, as here, "Chime" has obtained widespread use in video conferencing and collaboration services, it disserves the public interest to wrest this term from its broad public use and instead grant exclusivity to a company like CaféX that has not even demonstrated how widely (if at all) it is using the "Chime" term to sell a product.

### V.   CONCLUSION

For the foregoing reasons, Amazon respectfully requests that the Court denies Plaintiff's motion for a preliminary injunction.

Respectfully submitted,

/s/ Justin A. Nelson
Justin A. Nelson (*pro hac vice*)
Chanler A. Langham (4355749)
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 653-7895
Facsimile: (713) 654-6666
Email: jnelson@susmangodfrey.com
Email: clangham@susmangodfrey.com

Drew D. Hansen (*pro hac vice*)
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, Washington 98101
Telephone: (206) 373-7384
Facsimile: (206) 516-3883
Email: dhansen@susmangodfrey.com

Lucas Issacharoff (5382494)
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (212) 729-2018
Facsimile: (212) 336-8340
Email: lissacharoff@susmangodfrey.com

*Counsel for Amazon Web Services, Inc.*

## CERTIFICATE OF SERVICE

I certify that on March 28, 2017, this document was properly served on all counsel of record via electronic filing in accordance with the SDNY Procedures for Electronic Filing.

/s/ Justin A. Nelson
Justin A. Nelson