Justin A. Nelson (*pro hac vice*)
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 653-7895
Facsimile: (713) 654-6666
Email: jnelson@susmangodfrey.com

[Additional Counsel for Defendant on Signature Page]

*Counsel for Amazon Web Services, Inc.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CAFÉX COMMUNICATIONS, INC., | Case No. 1:17-cv-01349-VM-KNF |
| Plaintiff, | **DEFENDANT AMAZON WEB SERVICES, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL** |
| v. | |
| AMAZON WEB SERVICES, INC., | |
| Defendant. | |

CONTAINS CONFIDENTIAL INFORMATION
UNREDACTED VERSION FILED UNDER SEAL

## **TABLE OF CONTENTS**

Introduction ................................................................................................................................1

The Crime-Fraud Exception Applies to CaféX's Trademark Prosecution
Documents ................................................................................................................................2

    A.       Procedural Background ................................................................................................3

    B.       CaféX Misrepresented or Omitted Material Facts to the PTO ................................6

    C.       CaféX's Misrepresentations Provide Sufficient Basis to Pierce the
               Privilege and Apply the Crime-Fraud Exception ......................................................10

    D.       Requested Relief ........................................................................................................12

CafeX's Trademark Search Results Are Not Privileged and Should Be
Produced ..................................................................................................................................13

Conclusion ..............................................................................................................................14

CONTAINS CONFIDENTIAL INFORMATION
UNREDACTED VERSION FILED UNDER SEAL

# TABLE OF AUTHORITIES

Cases

*CytoSport, Inc. v. Nature's Best, Inc.*,
   No. CIVS061799 DFL EFB, 2007 WL 1040993 (E.D. Cal. Apr. 4, 2007) ...................... 13

*Gen. Healthcare Ltd. v. Qashat*,
   364 F.3d 332 (1st Cir. 2004) ............................................................................................. 9

*Grand Jury Subpoena Duces Tecum*,
   731 F.2d 1032 (2d Cir. 1984) ........................................................................................... 1

*Spalding Sports Worldwide, Inc.*,
   203 F.3d 800 (Fed. Cir. 2000) ........................................................................................ 10

*Orient Exp. Trading Co. v. Federated Dep't Stores, Inc.*,
   842 F.2d 650 (2d Cir. 1988) ........................................................................................... 10

*Raintree Publishers, Inc.*,
   218 U.S.P.Q. (BNA) ¶ 272 (T.T.A.B. Apr. 1, 1983) ........................................................ 9

*Specialty Minerals, Inc. v. Pluess-Staufer AG*,
   220 F.R.D. 41 (S.D.N.Y. 2004) ............................................................................. 1,10,11

*Thoip v. Walt Disney Co.*,
   736 F. Supp. 2d 689 (S.D.N.Y. 2010) ............................................................................ 13

*Tuccillo v. Geisha NYC, LLC*,
   635 F. Supp. 2d 227 (E.D.N.Y. 2009) ............................................................................ 10

Rules

FRCP 30(b)(6) .................................................................................................................... 2

CONTAINS CONFIDENTIAL INFORMATION
UNREDACTED VERSION FILED UNDER SEAL

Defendant Amazon Web Services, Inc., ("Amazon") submits this memorandum of law in support of its motion for an order compelling the production of documents that Plaintiff CaféX Communications, Inc. ("CaféX") has withheld as privileged concerning (1) the prosecution of application no. 86964190 ("the Application") submitted to the United States Patent and Trademark Office ("PTO") for CAFEX CHIME, and (2) searches conducted for other entities with the name "Chime" prior to filing the Application.

### I. Introduction

The first category of documents should be produced because they are subject to the crime-fraud exception to privilege, which applies to attempted frauds on the PTO.[1] *See, e.g., Specialty Minerals, Inc. v. Pluess-Staufer AG*, 220 F.R.D. 41, 42 (S.D.N.Y. 2004) (Marrero, J.). That exception permits the veil of attorney-client privilege to be pierced where there is evidence "sufficient to establish that 'a prudent person have a reasonable basis to suspect the perpetration or attempted perpetration of a crime or fraud, and that the communications were in furtherance thereof.'" *Id.* (quoting *In re Grand Jury Subpoena Duces Tecum*, 731 F.2d 1032, 1038 (2d Cir. 1984)). Here, CaféX made material misrepresentations to the PTO regarding (1) whether the goods described in the Application constituted "downloadable software"; (2) whether the substitute specimen CaféX submitted as "downloadable software" validly reflected the goods

---

[1] These documents appear to be logged in among other places, the Second Supplemental Privilege Log (Ex. C). Given the sparse descriptions in their privilege log, the documents may appear in other places too—both in the files of CaféX and the attorneys prosecuting the patent on behalf of CaféX. While CaféX is in the best position to identify such documents, Amazon has highlighted the relevant privilege logs—Exhibits A and C—with a non-exclusive list of the entries most likely to contain evidence giving rise to a reasonable suspicion of fraud.

described in the Application; and (3) when CaféX had a qualifying use of the mark in commerce. The evidence concerning these misrepresentations raises a reasonable suspicion of fraud and entitles Amazon to examine all documents related to the prosecution of trademark registration application no. 86964190 for CAFÉX CHIME—whether privileged or not.

The second category of documents should be produced because the results of CaféX's search for existing trademarks prior to filing its application for registration of CAFEX CHIME are not privileged.[2]  CaféX acknowledges that it conducted such a search, but will not reveal any results of the search or permit a witness to testify about the search results.  CaféX's aggressive assertions of privilege are in direct contradiction to the position taken by CaféX in seeking Amazon's trademark search results, and have made it impossible to explore on what basis CaféX repeatedly assured the PTO that its use of the mark "CAFEX CHIME"—and other marks, including "CHIME" alone—would not cause confusion with any preexisting marks.  In addition to the trademark search results, CaféX should be compelled to produce a witness to testify about the search results under FRCP 30(b)(6), because CaféX's assertions of privilege made it impossible for Amazon to learn these basic facts.

## II. The Crime-Fraud Exception Applies to CaféX's Trademark Prosecution Documents

This trademark dispute arises from CaféX's allegations that Amazon Chime infringes upon CaféX's trademark rights to the registered mark CAFEX CHIME and various unregistered

---

[2] These documents appear to be logged in, among other places, the Privilege Log (Ex. A) and the Supplemental Privilege Log (Ex. B.).  Given the sparse descriptions in their privilege logs, the documents may appear in other places too.

marks that use the name "Chime". Central to the dispute, therefore, is the validity of CaféX's registered mark. Discovery has revealed that CaféX may have obtained registration through the PTO's reliance on several misrepresentations that CaféX made to the PTO while prosecuting the Application for the mark. The evidence concerning these misrepresentations provides a reasonable suspicion that CaféX perpetrated or attempted to perpetrate a fraud on the PTO. Because CaféX's misrepresentations were contained in submissions prepared and submitted by CaféX's attorneys, the attorney-client privilege should be pierced.

### A. Procedural Background

CaféX filed an intent-to-use application numbered 86964190 for the CAFEX CHIME mark on April 5, 2016, Ex. D, designating the mark for International Class 009, which is limited to *downloadable* computer software. *See* Trademark Manual of Examining Procedure ("TMEP") §§ 1401.02(a) (defining class), 1402.03(d). The TMEP specifically distinguishes between *downloadable* software *products* and *non-downloadable* software: "Computer software is a product classified in International Class 9 if it is recorded on media or is *downloadable* and thus can be transferred or copied from a remote computer system for use on a long-term basis." *Id*. The PTO has also distinguished "downloadable software" available for registration under Class 9 from non-downloadable "Software as a Service" (SaaS). *See* USPTO Record 55074, https://tmidm.uspto.gov/modules/viewRecordPrint.html?referrer=public&recordId=55074 (accessed Sept. 29, 2017) (removing from Class 009 "Computer software that provides web-based access to applications and services through a web operating system or portal interface" and clarifying that "Software-as-a-Service (SaaS) services, which provide web-based access to software" belong to a different class).

3

CONTAINS CONFIDENTIAL INFORMATION
UNREDACTED VERSION FILED UNDER SEAL

At the same time that CaféX applied for a mark in connection with *downloadable* software, CaféX's marketing material trumpeted the *absence* of downloads as not merely a feature of CaféX Chime, but the defining distinction from its competitors. See Dkt. 61 (Amazon's Counterclaims) at ¶¶ 97-99 (identifying numerous instances of CaféX touting "no downloads," "no new plugins or downloads," etc.); Ex. P; Ex. Q. The centrality of CaféX Chime's no-downloads, no-plugins nature has been confirmed during depositions of CaféX personnel, including its CEO. *See* Musallam Tr. (Ex. J) 202:23-203:3 ("Q. . . . [Y]ou've seen the multiple [] documents that talk about CaféX being able to operate without a browser plug in, correct. A. Correct. Q. That was CaféX's marketing strategy from the beginning, correct. A. Correct.").

On January 30, 2017, CaféX submitted a statement of use with a sworn declaration of Thomas O'Flaherty purporting to identify actual use of the CaféX Chime mark in commerce "at least as early as 6/30/2016." Ex. E. In support of this statement of use, CaféX submitted four screenshots of CaféX's website discussing the CAFÉX CHIME pervasive collaboration product. Ex. F.

On February 28, 2017, the PTO rejected the screenshot specimens and explained "Registration is refused because the specimen in International Class 9 is not acceptable as a display associated with downloadable software and appears to be mere advertising material." The PTO continued, "Specifically, the specimen fails to provide the means to enable the user to download or purchase the software from the website," and explained:

> Examples of specimens for downloadable software include instruction manuals and screen printouts from (1) web pages showing the mark in connection with **ordering or purchasing information** or information sufficient to download the software, (2) **the actual program** that shows the mark in the title bar, **or** (3) **launch screens** that show the mark in an introductory message box that appears after opening the program. *See* TMEP §904.03(e), (i), (j).

4

CONTAINS CONFIDENTIAL INFORMATION
UNREDACTED VERSION FILED UNDER SEAL

Dkt. 28-3 at ECF 41-42 (emphases added).

To obtain registration and the benefit of its claimed priority date, CaféX therefore had to provide a "verified substitute specimen" that "(a) was in actual use in commerce prior to the expiration of the deadline for filing the statement of use and (b) shows the mark in actual use in commerce *for the software identified in the statement of use*." *Id.* (emphasis added).

At the time CaféX submitted its original statement of use, however, the CAFEX CHIME product described in the Application did not qualify as "downloadable software" that could be registered under International Class 9. For example, the screenshots that CaféX submitted as specimens of actual use in commerce, reveal that CAFEX CHIME was a product that "securely connects cloud and video collaboration systems to every browser *with no downloads* and easier scaling for IT." Ex. F; Solito 30(b)(6) Tr. (Ex. K) 30:23-31:5. The screenshot specimens further touted the CAFEX CHIME product as working on "Every browser" with "no new downloads."



CaféX was now in a bind. Because its application was for "downloadable software"—which the CAFEX CHIME product under development clearly was not—CaféX could not submit a specimen showing that the product could be or had been downloaded. And although CaféX filed multiple applications for marks with the "Chime" name two days after Amazon launched "Amazon Chime," any failure to establish actual use in commerce associated with the

5

original CAFEX CHIME trademark application would mean that CaféX could not claim that the CAFEX CHIME mark was senior to Amazon's AMAZON CHIME mark.

On March 22, 2017, in an attempt to resolve these issues, CaféX submitted an entirely new specimen and statement of use signed under oath by Daniel Solito. Ex. F. In the new statement of use, CaféX made several important representations to the PTO:

- First, CaféX deleted its representation that "the mark was first used at least as early as 02/25/2016 and first used in commerce as early as 06/30/2016."

- Second, CaféX revised the statement of use to say "In International Class 009, the mark was first used at least as early as 03/15/2017 and first used in commerce as early as 03/15/2017."

- Third, CaféX submitted a "substitute specimen of use" and explained "As shown in the specimen, the applied-for mark is used in connection with the goods and can be accessed via the 'Add to Chrome' button."

- Fourth, CaféX submitted a declaration that said "The substitute specimens are screenshots of the goods available for download."

- Finally, CaféX attached, as the substitute specimens, screenshots of two plug-in extensions in the Google Chrome web store that enable functionality that already exists in a Google Chrome browser to allow a user to schedule CaféX Chime meetings through Google Calendar and to use Google Chrome's built-in screen sharing functionality with a CaféX Chime meeting. Ex. G.

On May 30, 2017, the PTO, relying on these representations, accepted CaféX's substitute specimen and statement of use, and allowed registration of the CaféX Chime trademark.

### B. CaféX Misrepresented or Omitted Material Facts to the PTO

Throughout the course of discovery in this matter, CaféX has contradicted the representations it made to the PTO in three critical respects. Any one of these independently demonstrates fraud on the PTO.

First, CaféX misrepresented that the CAFEX CHIME product described in the Application constitutes "downloadable software" and therefore falls within the relevant Class 9

6

that allows it to try to claim priority of use over Amazon. Specifically, CaféX failed to explain that it expressly marketed the product as Software as a Service requiring no downloads, no plugins, and no extensions. ████████████

████████████
████████████
████████████
████████████
████████████
████████████
████████████
████████████

████ And CaféX confirmed the same at the preliminary injunction hearing. *See* Ex. I 19:14-20 ("THE COURT: In the time that your client has been in operation, do you have records of sales of the product before and after the Amazon launch? MR. BRAFMAN: Yes, your Honor. ***It is primarily a service***, and there has been ***one significant sale*** that took place last year. As far as I know there have been no sales since Amazon Chime launched." (emphases added)).

Second, CaféX misrepresented that the substitute specimens of use reflected use of the mark in connection with the download or ability to download the CAFEX CHIME product described in the Application. Specifically, when CaféX claimed the substitute specimens (1) show "the applied-for mark is used in connection with the goods and can be accessed via the 'Add to Chrome' button," and (2) are "screenshots of the goods available for download," CaféX failed to explain that the CAFEX CHIME product described in the Application is not available for download via the buttons in the screenshots. ████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

Third, CaféX misrepresented that the CAFEX CHIME product was first used in commerce under International Class 9 at least as early as June 30, 2016. ██████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

---

[3] ███████████████████████████████████████████

[4] ███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████ CaféX failed to provide these salient details to the PTO.

In addition, discovery has uncovered ████████████████████ ███████████████████████████████████████████—

███████████████████████████████████████████

---

[5] Even upon delivery of CaféX Chime to Rakuten, it is not clear that such a deal—providing CaféX Chime to CaféX's own board member and major investor solely for resale in Japan—constitutes use of goods in commerce under the Lanham Act. "The public purpose underlying trademark protection is the preservation of good will associated with the mark, and public awareness is obviously a requisite of good will." *Gen. Healthcare Ltd. v. Qashat*, 364 F.3d 332, 337 (1st Cir. 2004). Accordingly, courts have held that "follow[ing] intra-corporate shipments (serving no source identifying function) with overseas sales is likewise insufficient to garner trademark protection in the United States." *Id.*; *see also Raintree Publishers, Inc.*, 218 U.S.P.Q. (BNA) ¶ 272 (T.T.A.B. Apr. 1, 1983) (accepting sales to distributors only where applicant and distributor have "no corporate relationship and no other connection except for the arms-length distributorship agreement").

making it highly misleading to claim that a Google Chrome extension that *negates* CaféX's central marketing tenant would (or even could) constitute the CaféX Chime product itself. *See, e.g.*, Exs. P, Q.

The evidence here shows at a minimum that a prudent person would have a "reasonable basis" to suspect that CaféX perpetrated or attempted to perpetrate a fraud on the PTO. *See Specialty Minerals, Inc.*, 220 F.R.D. at 42. Therefore, the crime-fraud exception applies to CaféX's prosecution, and Amazon is entitled to the production of documents that CaféX withheld as privileged, including CaféX's communications with its attorneys about statements and representations made to the PTO concerning the CAFEX CHIME trademark.

### C. CaféX's Misrepresentations Provide Sufficient Basis to Pierce the Privilege and Apply the Crime-Fraud Exception

Fraud on the PTO requires a showing of a material, knowing misstatement: "The allegedly fraudulent statements may not be the product of mere error or inadvertence, but must indicate a deliberate attempt to mislead the PTO. Moreover, the knowing misstatement must have been with respect to a material fact—one that would have affected the PTO's action on the applications." *Orient Exp. Trading Co. v. Federated Dep't Stores, Inc.*, 842 F.2d 650, 653 (2d Cir. 1988) (finding fraud on PTO based on exaggeration of use in commerce); *see also Tuccillo v. Geisha NYC, LLC*, 635 F. Supp. 2d 227, 242 (E.D.N.Y. 2009) (finding a likelihood of success on ultimate fraud-on-the-PTO cancellation claim where plaintiff misrepresented date and nature of its use in commerce in statement of use).

However, piercing the privilege based upon the crime-fraud exception—of which fraud on the PTO is a species—does not require ultimate proof that a fraud occurred. As the Federal Circuit has explained, "the party seeking to overcome the attorney-client privilege need not conclusively prove fraud, or necessarily submit direct evidence to make a prima facie showing of

fraud." *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 808 (Fed. Cir. 2000). Instead, piercing the privilege "requires a demonstration by the party invoking it sufficient to establish that a prudent person have a reasonable basis to suspect the perpetration or attempted perpetration of a crime or fraud, and that the communications were in furtherance thereof." *Specialty Minerals, Inc.*, 220 F.R.D. at 42.

For example, in *Specialty Minerals*, 220 F.R.D. at 42, Judge Marrero granted a motion to pierce the privilege because the magistrate judge "found sufficient evidence that Pluess–Staufer intended to commit fraud on the Patent and Trademark Office ('PTO')." In his Report and Recommendation, which Judge Marrero adopted, Magistrate Judge Dolinger explained that the movant need not establish fraudulent intent for specific attorney-client communications when the movant is blocked from discovering such information:

> Defendants also argue that plaintiff has insufficiently linked a fraudulent intent to specific communications between Messrs. Rosenberg and Delfosse. The first difficulty with this argument is that defendants' counsel blocked plaintiff from posing even foundational questions at the deposition of Mr. Rosenberg. The second is that we may fairly infer that discussions that touched upon prior art or the 997 patent or the use of the re-examined patent in relation to pursuing litigation against other calcium carbonate manufacturers were integral to a plan that rested in part on obtaining a strengthened patent through an omission of a fact that would have seriously threatened the validity of that patent.

*Specialty Minerals, Inc. v. Pleuss-Stauffer AG*, No. 98 CIV. 7775(VM)(MHD), 2004 WL 42280, at *12 (S.D.N.Y. Jan. 7, 2004).



11

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ CaféX also listed as privileged scores of communications concerning representations made to the USPTO about CaféX's statement of use in commerce. *See* Exs. A, C. Therefore, it is more than reasonable to infer that discussions concerning the substitute specimens and misrepresentations to the PTO were integral to the fraud. For example, one CaféX representation—"As shown in the specimen, the applied-for mark is used in connection with the goods and can be accessed via the 'Add to Chrome' button"—was made in a Response to Office Action filed by CaféX's attorney. Ex. G at 5.

Amazon has accordingly made a reasonable showing of material misstatements made to the PTO, which sufficiently raise a reasonable suspicion of fraud on the PTO. Amazon is therefore entitled to pierce the privilege and examine CaféX's communications with its attorneys surrounding the misstatements.

### D. Requested Relief

In accordance with the Court's October 4 and 5 Orders, Amazon respectfully requests that CaféX be ordered to produce all documents, whether privileged or not, related to its trademark application filed April 5, 2016 for CAFEX CHIME and any subsequent amendments to it— specifically including communications surrounding CaféX's January 30, 2017 and March 22, 2017 submissions to the PTO. For the convenience of the Court, Amazon has submitted CaféX privilege logs (Exhibits A and C) with highlights containing a non-exclusive list of what Amazon believes are the entries most likely to contain evidence sufficient to raise a reasonable suspicion of fraud. In addition, Amazon requests that the Court order CaféX to prepare and produce a 30(b)(6) witness to offer unrestricted testimony on CaféX's trademark application and the statements in the application.

CONTAINS CONFIDENTIAL INFORMATION
UNREDACTED VERSION FILED UNDER SEAL

### III. CafeX's Trademark Search Results Are Not Privileged and Should Be Produced

During discovery, CaféX repeatedly stated that "TM search reports are not privileged" when pressing Amazon to produce the trademark search results Amazon obtained before releasing Amazon Chime. Ex. S at 1; *see also Thoip v. Walt Disney Co.*, 736 F. Supp. 2d 689, 700 n.73 (S.D.N.Y. 2010) (holding that disclosure of trademark search results did not waive privilege because "[t]rademark searches are factual in nature"); *CytoSport, Inc. v. Nature's Best, Inc.*, No. CIVS061799 DFL EFB, 2007 WL 1040993, at *6 (E.D. Cal. Apr. 4, 2007) ("The search reports, by themselves, contain factual information and not an attorney's mental impressions."). Amazon accordingly produced its search report.

When pressed in turn for its own pre-application trademark search, CaféX's tune suddenly changed. ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ CaféX now represents to the Court that that no formal trademark search was run or report generated; rather, CaféX claims its employees ran Google searches, and that any communications about those Google searches (including communications with no lawyers copied) are all privileged. *See* Ex. T at 19.

CaféX's conflicting statements not only contradict the position it took concerning Amazon's trademark search results, but also raise important questions. First, was there any actual attorney involvement in the searches sufficient to justify an assertion of attorney-client privilege? Second, did CaféX make sworn statements in its application contrary to the information obtained in the search results? Third, when CaféX representatives made sworn

13

statements that "CAFEX CHIME" would not cause confusion with any preexisting marks, what other entities, products, or services with the name "Chime" did CaféX discover in its search?

In accordance with the Court's October 4 and 5 Orders, Amazon respectfully requests that CaféX provide all of the documents related to the search results for *in camera* review. If the Court determines that any documents are in whole *or in part* unprivileged, Amazon requests that CaféX be compelled to produce such documents. Amazon also requests that CaféX be compelled to provide a 30(b)(6) witness with knowledge of the entities found by CaféX or its attorneys in the course of such a search.

### IV.     Conclusion

For the reasons set forth herein, Amazon respectfully requests that the Court:

1) Review *in camera* the documents provided by CaféX related to its CAFEX CHIME application for any evidence of fraud on the PTO and, upon a finding of a reasonable suspicion of fraud, order CaféX to produce such documents.

2) Order CaféX to produce a 30(b)(6) witness to offer full testimony on CaféX's trademark application process without any privilege objections, and/or re-produce Mr. Solito and Mr. MacGowan to offer testimony without privilege objection.

3) Review *in camera* the documents provided by CaféX related to its pre-application searches for any unprivileged factual information about CaféX's searches for entities, products, or services using the word "Chime" and order CaféX to produce such documents and in addition, order a 30(b)(6) deposition to provide testimony concerning the names CaféX or its attorneys found in any search.

CONTAINS CONFIDENTIAL INFORMATION
UNREDACTED VERSION FILED UNDER SEAL

| | |
|---|---|
| Dated: October 10, 2017 | By:   /s/ *Justin A. Nelson* |

                                              Justin A. Nelson (*pro hac vice*)
Chanler A. Langham (4355749)
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 653-7895
Facsimile: (713) 654-6666
Email: jnelson@susmangodfrey.com
Email: clangham@susmangodfrey.com

Drew D. Hansen (*pro hac vice*)
Genevieve Vose Wallace (*pro hac vice*)
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, Washington 98101
Telephone: (206) 373-7384
Facsimile: (206) 516-3883
Email: dhansen@susmangodfrey.com
Email: gwallace@susmangodfrey.com

Glenn C. Bridgman (*pro hac vice*)
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Ste. 950
Los Angeles, CA 90067
Tel.: 310 789-3100
Fax: 310 789-3150
Email: gbridgman@susmangodfrey.com

Lucas E. Issacharoff (5382494)
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (212) 729-2018
Facsimile: (212) 336-8340
Email: lissacharoff@susmangodfrey.com

*Counsel for Amazon Web Services, Inc.*